First National Bank & Trust Co. of Bethlehem, Appellant, *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Argued September 5, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Alan M. Black,* with him *Efron, Black & Epstein,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, December 12, 1973:

This is an appeal by the First National Bank & Trust Co. of Bethlehem from a determination of the Board of Finance and Revenue sustaining resettlement of appellant's shares tax liability for the year 1968 by the taxing authorities. Appellant then timely appealed to this Court.

The parties have filed a stipulation of facts which dispensed with the necessity for a trial by jury under the provisions of the Act of April 22, 1874, P. L. 109, 12 P.S. §688.

From the stipulation we make the following

### FINDINGS OF FACT

1. Appellant was at all times material hereto a banking corporation organized under the laws of the United States of America on December 1, 1863, with its principal office in Bethlehem, Pennsylvania.

2. On March 6, 1969, appellant timely filed its Pennsylvania Shares Tax and Loan Tax Report as of January 1, 1969, showing a liability for the shares tax as of January 1, 1969 (based on a tax rate of 10 mills), of $76,570.38.

3. Said return was filed entirely in accordance with the cash basis of accounting, on which basis appellant had filed all prior such returns.

4. On June 24, 1969, the Department of Revenue settled appellant's shares tax as of January 1, 1969, indicating a liability of $79,436.15 (based on a tax rate of 10 mills).

5. On September 23, 1969, a timely petition for resettlement was filed with the taxing authorities.

6. On April 8, 1970, the Department of Revenue resettled appellant's shares tax as of January 1, 1969, indicating a liability of $103,254.00 (based on a tax rate of 13 mills). This resettlement was approved by the Department of Auditor General on April 13, 1970, and notice thereof was mailed to appellant on April 15, 1970.

7. The aforesaid settlement and resettlement by the Department of Revenue were made entirely in accordance with the accrual basis of accounting.

8. If such resettlement had been made in accordance with the cash basis of accounting, then appellant's liability for the shares tax as of January 1, 1969, would have been $100,690.00, rather than $103,254.00 as indicated in the aforesaid resettlement.

9. The difference of $2,564.00 in liability is the amount in controversy.

10. The reason that the shares tax as of January 1, 1969, is higher on an accrual basis than on a cash basis is that, on an accrual basis the accrued interest is included in appellant's undivided profits, even though such interest was not actually received as of January 1, 1969. However, conversely, the Department of Reve-

nue permitted all accrued debts and deductions as of January 1, 1969, even though such debts and deductions had not been paid.

11. Appellant has always filed its Federal and State Tax Returns in accordance with the cash basis of accounting.

12. Appellant's shares tax as of January 1, 1967, and as of January 1, 1968, were settled by the Department of Revenue in accordance with the cash basis of accounting, even though the Department of Revenue was aware that appellant had kept its books on an accrual basis since January 1, 1967, for internal reporting purposes and for reports to shareholders.

13. It was the policy of the Department of Revenue beginning with the bank shares tax as of January 1, 1969, to take for tax accounting purposes, that method utilized by banks in their reports to shareholders and in internal accounting. This policy meant that the Department of Revenue and the Auditor General would accept, as an accounting basis, either cash or accrual accounting, so long as it was the accounting method utilized in the reports to the shareholders and for internal purposes. Prior to January 1, 1969, the policy of the Department of Revenue and the Auditor General was to accept, as an accounting basis, either cash or accrual accounting, whichever selected by the taxpayer, regardless of the method utilized in reports to shareholders or for internal purposes.

14. The change of rate of tax employed in the settlement and resettlement of the disputed tax liability is not in issue.

### Discussion

Appellant's Specification of Objections alleges that the Board of Finance and Revenue and the Department of Revenue erred "in converting the appellant's method of accounting from the cash basis to the accrual basis"

for the purpose of computing the tax liability in question. The former method was used by appellant when it submitted its shares tax return.

In its Statement of the Question Involved as set forth in its brief, appellant poses the issue in the following language: "Where a bank has consistently filed its shares tax and loans tax reports with the Commonwealth, as well as its federal tax returns, in accordance with the cash basis of accounting, can the Department of Revenue compel the bank to file its shares tax and loans tax report in a particular year in accordance with the accrual basis of accounting?" We note these two expressions of the issue on appeal not to suggest the possibility that different issues are thus raised but to question whether any justiciable issue is being raised in this appeal.

The relevant taxing statute involved is the Act of July 15, 1897, P. L. 292, *as amended*, 72 P.S. §1931 (commonly referred to as the Bank Shares Tax Act). Section 1 of the Act provides: "[E]very bank . . . having capital stock, incorporated . . . under any law of the United States . . . shall . . . make to the Department of Revenue a report . . . setting forth the full number of shares of the capital stock . . . and the actual value thereof . . . . It shall be the duty of the Department of Revenue to assess such shares for taxation . . . . The *actual value* of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus, and undivided profits, and dividing this amount by the number of shares." (Emphasis added.) 72 P.S. §§1931, 1932.

As we view it, the only possible issue properly before the Court is whether the Department of Revenue's policy requiring banks to file shares tax and loan tax returns in accordance with the basis of accounting which the banks use to report to shareholders and for internal management purposes is lawful or proper. Ap-

pellant argues that the Department of Revenue was without statutory authority or judicial precedent to convert appellant to an accrual basis taxpayer, after it has filed its initial report as a cash basis taxpayer. Appellant argues further that so long as its tax accounting method accurately represents actual value of its bank shares, it should not be compelled to report as an accrual basis taxpayer.

As a cash basis taxpayer, appellant would compute its income and expenses by recognizing only amounts of cash actually received and expended, respectively, within a given period of time. As an accrual basis taxpayer, appellant would be required to recognize as income *all* profits earned within a given period of time even though no corresponding cash had been received at the time of the report; and it would be allowed to recognize as expenses any liabilities accrued even though no cash had been disbursed at the time of the report.[1]

It is not for this Court to decide whether, as a general rule, either cash basis accounting or accrual basis accounting is the most accurate means of determining actual value of bank shares for the bank shares tax. This is because the statute places the responsibility for determining the actual value of bank shares upon the Department of Revenue under a prescribed formula. The actual value of each share must be determined by adding together the amount of capital stock paid in, the surplus, and undivided profits, and dividing this amount by the number of shares. 72 P.S. §1932. The decisional law is replete with decisions which do not unnecessarily or arbitrarily bind the Commonwealth in its determination of "actual value" of bank shares for bank share tax purposes.

---

[1] *See* Judge SOHN's opinion in *Commonwealth of Pennsylvania v. First National Bank of Scranton*, 63 Dauph. 298, 305 (1952) for judicial recognition of these accounting methods. *Aff'd*, 378 Pa. 272, 106 A. 2d 218 (1954). *See also* Finding of Fact number 10.

In *Commonwealth of Pennsylvania v. City National Bank, Philadelphia, Pennsylvania,* 52 Dauph. 87 (1941), the value of taxpayer's listed securities was at issue. The court held that the taxing authorities were not required to accept "book value" as actual value of bank shares. Neither were they required to ascertain the market value of any particular asset which entered into the valuation of bank shares, but where the market value was readily ascertainable, as in the case of listed securities, use of market value in ascertaining actual value was not improper. Further, the value of taxpayer's bank buildings was at issue. The court held that taxing authorities were not obligated to take taxpayer's proffered independent appraisement as to the value of the bank buildings. To the contrary, the fiscal officers were allowed to take the values as fixed by the Federal Bank Examiner, which were substantially adopted by the bank in presenting the statement of its financial condition to the public.

In *Commonwealth v. Butler County National Bank,* 376 Pa. 66, 101 A. 2d 699 (1954), the question of whether unrealized appreciation on securities held by taxpayer for investment purposes should be used in determining the actual value of bank shares was presented. In holding that unrealized appreciation on securities was a factor in determining actual value, the Supreme Court noted: ". . . the Act does not restrict the Commonwealth's fiscal officers to what the bank's books show nor does it prohibit them from ascertaining independently what the capital stock paid in, the surplus and undivided profits of a taxpayer bank *actually* amount to. It may readily be conceded that the appellant bank used the most approved accounting practices in carrying *on its books* its investment securities at cost (with an allowance for possible losses), but the fact still remains that the appraisal of such investments at their *market* value contributes to a more truly *actual*

valuation of the bank's capital shares. And, that is what the Act expressly taxes." (Emphasis in original.) 376 Pa. at 70, 101 A. 2d at 700.

In *Commonwealth v. First National Bank of Scranton,* 378 Pa. 272, 106 A. 2d 218 (1954), a taxpayer bank had established a reserve for losses upon loans and discounts based upon a twenty-year business cycle in order to reduce the face value of loans and discounts. The issue was whether the Department acted properly when it re-computed the permissible valuation reserve for losses on loans and discounts on a five-year basis rather than a twenty-year basis. Taxpayer's argument that a twenty-year reserve was an approved method of valuing loans by federal agencies was answered by the Court's pronouncement that the Commonwealth was not guided by rules and regulations adopted by the federal government. With the Court convinced of the reasonableness of the Department of Revenue's action, the taxpayer's appeal was dismissed.

While it is clear that Commonwealth fiscal officers are not bound by taxpayer's own valuations, it is equally clear that the Commonwealth may not arbitrarily assign values without regard to the facts, nor may it assign a value without sufficient data on which to base its conclusion. *Commonwealth v. Butler County National Bank, supra,* 376 Pa. at 71, 101 A. 2d at 701. What is disturbing to this Court is Stipulation of Fact number 19 (Finding of Fact number 13), which reads in pertinent part: "It was the policy of the Department of Revenue beginning with the Bank Shares Tax as of January 1, 1969, to take for tax accounting purposes, that method utilized by banks in their reports to shareholders and in internal accounting. This policy meant that the Department of Revenue and Auditor General would accept, as an accounting basis, either cash or accrual accounting, so long as it was the accounting method utilized in the reports to the shareholders and for internal purposes."

The Commonwealth contends that this approach to valuation is justified because the bank shares tax is a tax on the value of bank shares in the hands of its shareholders. Therefore, the basis used by the bank to report to shareholders should be the basis used to report the actual value of the shares for tax purposes.

If this policy is in reality an abdication by the taxing authorities of their duty to tax bank shares on actual value, there cannot be any authority in law for the adoption or application of such a policy, as in any given case a particular method of accounting may not produce this result with respect to particular assets. If, on the other hand, the announced policy could be considered merely a directive *only* as to the method of accounting to be employed by a taxpayer in reporting for shares tax purposes, it might stand muster. In such a case it could be considered as retaining in the taxing authorities their right and duty to establish actual cash value regardless of the method of accounting employed by the taxpayer in reporting as the directive commands. Whichever it is, it is incumbent upon the taxing authorities to either revoke the directive, if of the former character, or to amend it, if the latter, making it perfectly clear that it reserves the right to question reported actual cash value of shares regardless of the method of accounting employed.

As applied to this appeal, we are left without any issue to decide. Assuming the policy (directive issued) to be unlawful, appellant points to no particular error of the taxing authorities in resettlement of its tax liability by utilizing the accrual basis method of accounting. It has not asserted and there are no facts of record to support that as to a particular asset or assets, another method of accounting better reflects actual cash value of the shares. Assuming, on the other hand, that the policy (directive issued) did not and was not intended by the taxing authorities as an abdication of

their right and duty to determine actual value, again we are without any facts of record or issues raised by appellant countering the resettlement of its tax liability in question. That one method of accounting produces a different result from that produced by another method as to a particular asset or assets is not proof of disputed actual value. Having failed to point to any particular asset or assets which appellant might contend were improperly valued in resettlement of its shares tax liability, the resettlement in dispute must be sustained for want of proof required of taxpayers on appeal.

### Conclusions of Law

1. The taxing authorities by rule, regulation, policy statement or directive with respect to enforcement of the Act of July 15, 1897, P. L. 292, *as amended*, 72 P.S. §1931 (commonly referred to as the Bank Shares Tax Act), may not abdicate their responsibility to examine returns and effect resettlement of tax liability based upon actual value.

2. The appeal of First National Bank & Trust Co. of Bethlehem should be dismissed for want of proof that resettlement of appellant's shares tax liability for the years in question was not based upon actual value.

### Order

Now, December 12, 1973, the appeal of First National Bank & Trust Co. of Bethlehem from the decision of the Board of Finance and Revenue sustaining resettlement of appellant's shares tax liability for the tax year as of January 1, 1969, is hereby dismissed.

The Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth in the amount of $2,-564.00 and mark the same satisfied, the amount in controversy having been paid, unless exceptions are filed within thirty (30) days of the date of this Order.