Citizens National Bank & Trust Co., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued June 3, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, MACPHAIL and PALLADINO.

*Alphonsus R. Romeika, Romeika, Fish & Scheckter,* for petitioner.

*Vincent J. Dopko,* Deputy Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, December 23, 1981:

This is an appeal by Citizens National Bank and Trust Company (Taxpayer) from an Order of the Board of Finance and Revenue refusing Taxpayer's Petition for Refund of a portion of its Bank Shares Tax. We affirm.

We adopt as our findings the facts stipulated by the parties.

Taxpayer, a banking institution, is subject to the annual Bank Shares Tax imposed by Section 701 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, 72 P.S. §701 (Bank Shares Tax), and uses an accrual system of accounting.[1] Taxpayer's Shares and Loans Tax Report conformed to the Department's Rules and Regulations, but taxpayer attached a rider reserving its right to challenge the Department's practice regarding Taxpayer's Reserve for Losses on Loans.

---

[1] Section 701 of the Bank Shares Tax provides in pertinent part:

> Every bank or savings institution . . . shall . . . make to the Department of Revenue a report . . . setting forth the full number of shares of capital stock subscribed for or issued . . . and the actual value thereof. . . . It shall be the duty of the Department of Revenue to assess such shares . . . at the rate of fifteen mills upon each dollar of actual value thereof, the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus, and undivided profits, and dividing this amount by the number of shares

Taxpayer's Shares and Loans Tax Report showed the actual value subject to tax to be $2,596,569. On April 26, 1978, the Department made a settlement of Taxpayer's Shares and Loans Tax Report and set Taxpayer's actual value subject to tax at $2,669,431. On May 1, 1978, the settlement was approved by the Department of the Auditor General.

In calculating the settlement, the Department determined Taxpayer's capital value by (1) including as undivided profits $170,044 contained in Taxpayer's Reserve for Losses on Loans (a contingency reserve of $108,440 plus a valuation reserve of $61,604) and (2) allowing Taxpayer a credit of $6,807, an amount based upon the yearly average of Taxpayer's actual loan losses for the five-year period immediately preceding the tax year in question.

Taxpayer's $170,044 Reserve for Losses on Loans is the sum of (a) $88,923, originally extracted from undivided profits to establish the Reserve, and (b) $81,121 not extracted from undivided profits. Taxpayer does not dispute the inclusion of the first sum but does dispute the inclusion of the second. If the entire $170,044 is included in Taxpayer's undivided profits, and consequently in its capital valuation, the tax is $40,041.47. If the $81,121 in dispute is not included, the tax is $38,821.08.

Taxpayer paid $40,041.47 and timely filed a Petition for Refund, which the Board of Finance and Revenue denied.

Taxpayer challenges the Department's method of calculating capital value which includes in undivided profits the entire amount of Taxpayer's Reserve for Losses on Loans (Reserve). Taxpayer argues that of the $170,044 in the Reserve for the tax year in question, only $88,923 was actually extracted from undivided profits, and, therefore, the remaining $81,121

in the Reserve which came from other sources should not be included in undivided profits. By so doing the Department is inflating the value of the shares and, in essence, taxing an asset that does not exist.

When a taxpayer challenges a settlement determination made by the Department, this Court looks to see if the actual value[2] as set by the Department is a "reasonable sum which will reflect the material worth of the asset. So long as the determination of actual value of an asset at a given date is based on facts and reasonable indicia of material worth, *the action of the Department of Revenue will not be disturbed." First National Bank of Leechburg v. Commonwealth,* 40 Pa. Commonwealth Ct. 175, 180, 396 A.2d 909, 912 (1979) (emphasis in original) (quoting *Commonwealth v. First National Bank of Scranton,* 63 Dauph. 298, 304 (C.P. Pa. 1952), *aff'd,* 378 Pa. 272, 106 A.2d 218 (1954)). In making its determination, however, the Department cannot *arbitrarily* assign values to a bank's assets which are different than those supplied by the bank in its shares tax return. *First National Bank & Trust Co. of Bethlehem v. Board of Finance and Revenue,* 11 Pa. Commonwealth Ct. 175, 312 A.2d 848 (1973).

The Department, on the other hand, takes the position that Taxpayer's Reserve is a contingency established to insure the stability of the bank and to provide security for depositors. As such, it is based on the *possibility* of future liabilities. The amount in the Reserve is *not* based on existing liabilities, either

---

[2] In determining a bank's actual value subject to tax, the general accounting principle that "the value of shares of capital stock as computed from books of account, is equal to the excess of the total book values of assets over the total sum of liabilities" is applied. *Commonwealth v. First National Bank of Scranton,* 63 Dauph. 298, 301 (C.P. Pa. 1952), *aff'd,* 378 Pa. 272, 106 A.2d 218 (1954).

actual or accrued and it would therefore be improper to exclude the amount of the Reserve from Taxpayer's actual value. The fact that only $88,923 of the Reserve originally came from undivided profits bears nó relevance to the total amount currently in the Reserve because, by standard bank accounting practice, some loans are classified as contingent losses and other loans are written off on a regularly-scheduled basis so that the net value of the account will vary through time and depend on net additions and write-offs from the account. Since the Department allows Taxpayer a credit for *actual* loan losses[3] its treatment of the Reserve results in a much more accurate assessment of Taxpayer's actual value than would a blanket omission of contingency funds not originally taken from undivided profits.

The tax settlement challenged herein is reasonable and meets the standards set forth in *First National Bank of Leechburg* and *First National Bank of Scranton*. Accordingly, we enter the following

## ORDER

AND Now, December 23, 1981, the appeal of the Citizens National Bank from the decision of the Board of Finance and Revenue, dated November 28, 1979, Docket No. C-5324, is hereby dismissed.

The Chief Clerk is hereby directed to enter judgment in favor of the Commonwealth unless exceptions are filed within thirty (30) days of the date of this Order.

---

[3] The credit is determined by taking the yearly average of Taxpayer's actual losses on loans for the five-year period immediately preceding the taxable year in question. This method was held to be reasonable and valid in *Commonwealth v. First National Bank of Scranton*, 63 Dauph. 298 (C.P. Pa. 1952), *aff'd*, 378 Pa. 272, 106 A.2d 218 (1954).