465 A.2d 965

The DALE NATIONAL BANK, Petitioner,

v.

COMMONWEALTH of Pennsylvania, Respondent.

Supreme Court of Pennsylvania.

Argued May 23, 1983.

Decided Sept. 15, 1983.

Frank A. Sinon, Sherill T. Moyer, Jack F. Hurley, Jr., Harrisburg, for petitioner.

Vincent J. Dopko, Deputy Atty. Gen., for respondent.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

Petitioner Dale National Bank seeks review of an order of the Board of Finance and Revenue refusing a petition for refund of bank shares tax paid for tax year 1978. In a petition for review filed in the Commonwealth Court, petitioner claimed that the bank shares tax imposed improperly reflected a tax on two classes of assets: obligations of the United States, in violation of 31 U.S.C. § 742 (now 31 U.S.C. § 3124(a)); and state and municipal obligations, in violation of the Act of August 31, 1971, P.L. 395, § 2, 72 P.S. § 4752–2 (Supp.1983). This Court assumed plenary jurisdiction over the petition for review on April 5, 1983, prior to decision by the Commonwealth Court. See 42 Pa.C.S. § 726.

We hold, in accordance with the recent decision of the Supreme Court of the United States in *American Bank and Trust Co. v. Dallas County*, —— U.S. ——, 103 S.Ct. 3369, 77 L.Ed.2d 1072 (1983), interpreting 31 U.S.C. § 742; that obli-

gations of the United States owned by petitioner were improperly taken into consideration in computing petitioner's bank shares tax. As to the claim of improper taxation of petitioner's state and municipal obligations, we hold that the Act of August 31, 1971, does not prohibit the consideration of such obligations in the computation of bank shares tax liability. Accordingly, we vacate the order of the Board and remand the record to the Board for proceedings consistent with this opinion.

I.

Section 701 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, 72 P.S. § 7701 (Supp.1983), requires state and national banks located in Pennsylvania to submit written reports to the Department of Revenue by April 15 of each year setting forth the "number of shares of the capital stock subscribed for or issued" and "the actual value thereof," as of January 1 of the reporting year. The actual value of each share is to be ascertained by adding together "the amount of capital stock paid in, the surplus, and undivided profits," and dividing the sum by the number of shares. It has been the practice of the Department to treat various reserve accounts derived from capital as part of the tax base. See *Citizens National Bank & Trust Co. v. Commonwealth*, 63 Pa.Cmwlth. 383, 437 A.2d 1327 (1981). After the various reserve accounts have been added to the capital accounts, the "actual value" of capital is determined by adjusting the book value of the assets upward or downward to reflect the market value of the assets on January 1 of the reporting year. See *Commonwealth v. Butler County National Bank*, 376 Pa. 66, 101 A.2d 699 (1954). The Department is to assess the actual value of capital "at the rate of fifteen mills upon each dollar of actual value thereof." § 701.

Petitioner's statement of financial condition as of December 31, 1977, reported total assets of $58,681,870.17 and total liabilities of $54,760,541.07, leaving total capital of $3,921,329.10. Included among capital accounts were paid-in capi-

tal stock of $700,000.00, surplus of $1,000,000.00, undivided profits of $2,118,181.64, and a reserve for contingencies of $103,147.46. The paid-in capital stock, surplus, and undivided profits accounts were reported to the Department of Revenue on the form prescribed by the Department in the amounts in which they had appeared in petitioner's statement of financial condition, a total book value of capital of $3,818,181.64. In its report to the Department, petitioner added to the total book value of capital a sum of $431,245.54, which represented the value of various reserves derived from capital. See *Citizens National Bank & Trust Co. v. Commonwealth,* supra.[1]

Petitioner's statement of financial condition as of December 31, 1977, placed the book value of securities and other obligations of the United States owned by petitioner at $5,280,291.81; these assets had a market value of $5,246,677.50, a decline of $33,614.31. The book value of state and municipal obligations owned by petitioner was $10,445,497.74, while their market value was $10,345,234.42, a decline of $100,263.32. In its report to the Department, petitioner deducted the amounts by which these assets had declined in value, totaling $133,877.63, as well as a sum of $39,682.80, the difference between the book value and market value of certain other securities and loans. See *Commonwealth v. Butler County National Bank,* supra. Petitioner also subtracted a sum of $845,084.31, the value of student loans guaranteed by the Pennsylvania Higher Education Assistance Agency (PHEAA). The value of PHEAA-guaranteed student loans is to be "at all times free from taxation" "for the purpose of determining the actual value of shares" under section 701 of the Tax Reform Code of 1971. See Act of August 7, 1963, P.L. 549, § 7, as amended, 24 P.S. § 5107 (Supp.1983); "Corporation Tax Bulletin F–81," January, 1976, CCH Pa.Tax Rptr. ¶ 29–210.40.

1. Petitioner's statement of financial condition contains reserves not only for contingencies but also for loan losses and interest on deposits. Although the form on which petitioner reported its addition of reserves of $431,245.54 refers to a "Schedule 5" for elaboration, that schedule has not been made a part of the record.

After increasing the capital accounts by an amount in reserve accounts, decreasing the capital accounts by the difference between the book value and market value of obligations of the United States, state and municipal obligations, other securities, and loans, and further decreasing the capital accounts by the total amount of PHEAA-guaranteed student loans, petitioner arrived at a sum of $3,230,782.44. This sum was identified on the reporting form as the "Actual Value of Total Shares" and the "Actual Value Subject to Tax." The reported tax owed, at a rate of 15 mills per dollar of actual value subject to tax, was computed to be $48,461.74. The Department of Revenue settled petitioner's tax liability in the amount stated, the Auditor General approved the settlement, and petitioner paid the tax.

On October 27, 1980, while petitioner's petition for review of the order of the Board of Finance and Revenue was pending in the Commonwealth Court, petitioner and the Commonwealth entered into a "Stipulation of Facts," which set forth the parties' agreement as to the book values and market values of the relevant accounts of petitioner. The stipulation also provided:

"If the Court sustains the position of the Petitioner as to the exclusion of U.S. securities and accrued interest thereon, or as to the exclusion of Pennsylvania Securities and accrued interest thereon, or as to the exclusion of both U.S. securities and accrued interest thereon and Pennsylvania Securities and accrued interest thereon, it is agreed that the Petitioner's Bank Shares Tax as of January 1, 1978 is $–0–. . . ."

This stipulation reflects a determination that the assets in question and PHEAA-guaranteed student loans are to be treated alike if the assets in question are excludable.

II.

Under section 742 of Title 31 of the United States Code,
  "[a]ll stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This

exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other non-property taxes in lieu thereof imposed on corporations and except estate taxes and inheritance taxes."

See 31 U.S.C. § 3124(a). In *American Bank and Trust Co.,* supra, the Supreme Court read the "plain language" of section 742 to bar a tax "regardless of its *form* if federal obligations must be considered, either directly or indirectly, in *computing* the tax." —— U.S. at ——, 103 S.Ct. at 3374. Accordingly, the Court held violative of section 742 a state bank shares tax based on an equity capital formula, "the usual method for assessing the value of bank shares," —— U.S. at ——, 103 S.Ct. at 3375, which computes tax on the basis of the difference between a bank's capital assets and liabilities. "Plainly, such a tax takes into account, at least indirectly, the federal obligations that constitute a part of the bank's assets." —— U.S. at ——, 103 S.Ct. at 3374.

Here it is equally apparent that the bank shares tax assessed against petitioner for tax year 1978 improperly took into consideration obligations of the United States owned by petitioner. Petitioner's tax liability was determined on the basis of the actual value of petitioner's capital accounts, as adjusted for reserve accounts derived from capital. The total of those capital accounts is, under basic accounting principles, the difference between petitioner's total assets, nearly ten per cent of which constituted United States obligations, and petitioner's total liabilities. Thus, just as in *American Bank and Trust Co.,* the bank shares tax imposed on petitioner was computed on the basis of equity capital, which in turn was determined, in part, by United States obligations. Because "Congress intended . . . to invalidate all taxes measured directly or indirectly by the value of federal obligations, except those specified in [section 742]," *American Bank and Trust Co.,* supra, —— U.S. at ——, 103 S.Ct. at 3377, the bank shares tax assessed against petitioner cannot stand.

■ The Commonwealth seeks to bring the bank shares tax within the exception for "nondiscriminatory franchise taxes" contained in section 742 by relying on a recent act of the Legislature, Act 317 of 1982, Act of December 17, 1982, P.L. 1385, 72 P.S. § 7701.1 (Supp.1983), which added a new section, section 701.1, to the Tax Reform Code. That section provides that the tax imposed by section 701 on the actual value of capital stock paid in, surplus, and undivided profits "shall be a tax for the privilege of doing business in this Commonwealth. . . ." The act was made effective immediately, and new section 701.1 was made retroactive to March 4, 1971, the date of enactment of the Tax Reform Code of 1971, subject to the proviso that "if . . . it should be finally determined by a court of competent jurisdiction that such retroactive effect and construction may not be so applied to the said act as hereby amended, the provisions of section 2 [(adding section 701.1)] shall be construed to have retroactive effect to the earliest date to which retroactive effect may be given." § 3.

The Commonwealth has overlooked the fact that neither section 701.1 nor any other provision of Act 317 effected a change in the means of calculating petitioner's bank shares tax. Although section 701.1 would characterize the tax imposed by section 701 as a "tax for the privilege of doing business," it is clear that the tax imposed by section 701 was and continues to be a property tax identical in operation and effect to the tax invalidated in *American Bank,* both of which, contrary to the intent of Congress, "unduly burden federal obligations." —— U.S. at ——, 103 S.Ct. at 3378.[2]

■ Although petitioner is correct in concluding that its United States obligations were improperly taken into consideration in the computation of bank shares tax liability, petitioner is incorrect in asserting that its state and municipal obligations likewise may not be taken into consideration.

2. Act 317 of 1982 additionally provides that the Department of Revenue is not to increase a bank's undivided profits by the amount of valuation reserve for loan losses. § 2, adding § 701.2. This provision was made effective as of January 1, 1982, and, hence, is not at issue here.

Section 2 of the Act of August 31, 1971, P.L. 395, 72 P.S. § 4752–2 (Supp.1983), upon which petitioner relies, does not contain a sweeping prohibition against "direct or indirect consideration" of state and municipal obligations similar to that found in 31 U.S.C. § 742. Nor does section 2 contain a specific prohibition against the consideration of the value of state and municipal obligations "for the purpose of determining the actual value of [bank] shares" similar to the provision which so excludes PHEAA-guaranteed student loans. See Act of August 7, 1963, as amended, supra, 24 P.S. § 5107. Rather, section 2 of the Act of August 31, 1971, merely provides that "all [state and municipal] obligations, their transfer, and the income therefrom . . . shall at all times be free from taxation." Here, it is clear that the bank shares tax is imposed on capital owned and employed by petitioner in its banking operations, which capital is a property interest separate from the state and municipal obligations themselves.

Because the order of the Board of Finance and Revenue refusing petitioner a refund of taxes paid on United States obligations is erroneous under the recent, controlling decision of the Supreme Court of the United States in *American Bank and Trust Co. v. Dallas County,* supra, the order of the Board refusing the petition for refund must be vacated, and the record remanded to the Board for proceedings consistent with this opinion.[3]

3. Petitioner's right to pursue a refund of bank shares tax unlawfully imposed on United States obligations has not been validly revoked by section 4 of Act 317. That section provides:

"[N]o cash refund shall be made and no tax credit shall be allowed arising from any voluntary payment of tax under any provision of Article VII or VIII of the 'Tax Reform Code of 1971,' upon the basis that the inclusion of United States obligations in the tax base was or is unconstitutional or illegal . . . nor shall any action or proceeding be commenced or further prosecuted for the attainment, directly or indirectly, of any such cash refund or tax credit, without regard to the legal or equitable entitlement of the Commonwealth to such taxes voluntarily paid."

Section 4 is manifestly invalid, as it impermissibly attempts to "extinguish a cause of action which has already accrued to a claimant." *Gibson v. Commonwealth,* 490 Pa. 156, 161, 415 A.2d 80, 83 (1980) (statute reinstating sovereign immunity unconstitutional as

178

Order of the Board of Finance and Revenue vacated and record remanded to the Board for proceedings consistent with this opinion.

NIX, J., did not participate in the consideration or decision of this case.

applied to causes of action which had accrued prior to statute's enactment). See also *United States v. Klein,* 13 Wall. 128 (U.S.1872) 20 L.Ed. 519 (Congress may not prescribe rule of decision in pending case to which Government is party).