528 A.2d 942

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PHILADELPHIA, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania,
Eastern District.

Argued Oct. 24, 1986.
Decided July 9, 1987.

John F. Stoviak, Timothy W. Callahan, II, Philadelphia, for appellant.

LeRoy S. Zimmerman, Atty. Gen., Vincent J. Dopko, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, HUTCHINSON and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

In this appeal we must determine whether interest on tax-exempt Commonwealth obligations held for investment by a mutual thrift institution must be included in that institution's net income for purposes of the Mutual Thrift Institution Tax Act ("MTITA"),[1] and is thereby subject to taxation.

### I.

The stipulations agreed to by the parties to this appeal reflect the following pertinent facts. Appellant First Federal Savings and Loan Association of Philadelphia ("First Federal") is a mutual thrift institution within the meaning of section 2 of the MTITA, 72 P.S. § 1986.2, and is subject to taxation under that statute.[2] Pursuant to the MTITA First Federal filed a tax report for the year ending December 31, 1972, with the Department of Revenue ("Department") and made payments on account totaling Three Hundred Thousand Five Hundred Forty-three dollars ($300,-543.00) for that year. The Department made a settlement of First Federal's tax for the year in the amount of Three

1. Act of June 22, 1964, P.L. 16, No. 2, §§ 1–6, *as amended,* 72 P.S. §§ 1986.1–1986.6 (Supp.1985), superseded by Act of December 1, 1983, P.L. 228, No. 66, § 7, *as amended,* now Article XV of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, No. 2, art. XV, §§ 1501–1505, *as amended,* 72 P.S. §§ 8501–8505 (Supp.1987).

2. Section 2 of the MTITA provided:
   As used in this act "mutual thrift institution" shall be construed to mean every savings bank without capital stock incorporated by or under any law of this Commonwealth, every building and loan association, every savings and loan association incorporated under the laws of this Commonwealth and every federal savings and loan association incorporated under the laws of the United States and located within this Commonwealth.

Hundred Six Thousand Three Hundred Sixty-one Dollars and Sixty-one Cents ($306,361.61), which was approved by the Department of the Auditor General ("Auditor General") on November 16, 1973. First Federal subsequently filed a petition for resettlement for its 1972 tax requesting tax-exempt treatment for Fifty Thousand Five Hundred Ninety-seven Dollars ($50,597.00) of interest income received on various obligations issued by the Commonwealth, its agencies or political subdivisions ("Commonwealth obligations"), which the Department had added to First Federal's reported net income. That petition was refused after a hearing on June 20, 1974. First Federal then filed a petition for review with the Board of Finance and Revenue ("Board") which was refused after a hearing on November 20, 1974. A timely notice of appeal from that refusal was filed in the Commonwealth Court on December 19, 1974.

First Federal's experience with the Department concerning the tax year ending September 30, 1973, was similar. First Federal reported and paid a tax of Two Hundred Ninety-four Thousand Three Hundred Forty-five Dollars and Thirty-eight Cents ($294,345.38) but the Department, again adding the interest earned on Commonwealth obligations to First Federal's net income, settled the tax in the amount of Three Hundred Three Thousand Thirty-five Dollars and One Cent ($303,035.01).[3] The settlement was approved by the Auditor General on March 18, 1975. First Federal unsuccessfully sought a resettlement requesting tax-exempt treatment for Seventy-five Thousand Five Hundred Sixty-two Dollars of interest earned on Commonwealth obligations during the 1973 tax year. The Board upheld the Department, and First Federal filed a second appeal in the Commonwealth Court on July 29, 1982.

The Commonwealth Court *en banc* heard oral argument on First Federal's appeals from the 1972 and 1973 tax settlements on April 10, 1985. On September 13, 1985, that

3. Of the increased tax, Eight Thousand Six Hundred Eighty-nine Dollars and Sixty-Three Cents ($8,689.63) resulted from the inclusion of interest from Commonwealth obligations in First Federal's net income. The remaining sum by which the tax was increased is not at issue in these proceedings.

court, being evenly divided,[4] entered an order upholding the decisions of the Board subject to the filing of exceptions. First Federal's exceptions were dismissed on October 29, 1985, and judgment was entered on the September 13, 1985, order, 91 Pa.Cmwlth. 634, 498 A.2d 455. This appeal followed.[5]

## II.

The starting point of our inquiry is the Act of August 31, 1971, P.L. 395, No. 94, 72 P.S. §§ 4752–1, 4742–2 (Supp. 1987) ("Act 94"), which exempts the income generated by Commonwealth obligations from state and local taxation, with stated exceptions. Act 94 provides in its entirety as follows:

§ 4752–1. Legislative finding and declaration of policy

The General Assembly hereby finds and declares that all obligations issued by the Commonwealth, any public authority, commission, board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision shall be for the performance of essential governmental functions which shall and will be in all respects for the benefit of the people of the Commonwealth, for the increase of their commerce and prosperity and for the improvement of their health and living conditions.

§ 4752–2. Exemption from taxation

Notwithstanding the provisions of any law presently or hereafter enacted to the contrary, all obligations, their transfer and the income therefrom (including any profits made on the sale thereof), issued by the Commonwealth, any public authority, commission, board or other agency

4. Doyle, J., filed an opinion in support of reversal joined by Rogers and Palladino, JJ.; MacPhail, J., filed an opinion in support of affirmance joined by Crumlish, P.J., and Barry, J. Colins, J., did not participate in the decision of the case.

5. This Court is vested with jurisdiction pursuant to section 723(b) of the Judicial Code, 42 Pa.C.S. § 723(b), which provides for an appeal as of right from any final order of the Commonwealth Court in an appeal from a decision of the Board of Finance and Revenue.

created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation for State and local purposes within the Commonwealth except that any such obligations, which prior to the effective date of this act were subject to inheritance and estate taxation under the provisions of other existing acts of the General Assembly, shall continue to be subject to such taxation and any obligations issued after the effective date of this act which, but for this act, would be subject to inheritance and estate taxation, shall be subject to such taxation.

72 P.S. §§ 4752–1, 4752–2 (Supp.1987).

Our decision in the instant matter turns on whether, for purposes of Act 94, the MTITA is a direct tax on income, as First Federal contends, or an indirect franchise tax on the privilege of doing business, as the Commonwealth insists.

The portions of the MTITA relevant to our decision provide in pertinent part:

(b) From and after the passage of this act, every mutual thrift institution shall annually, upon the fifteenth day of April of each year ... make a report to the Department of Revenue, setting forth the *entire amount of net earnings or income* received or accrued by said mutual thrift institution *from all sources* during the preceding year, and such other information as the department may require, and *upon such net earnings or income* the said mutual thrift institution *shall pay* into the State Treasury, through the Department of Revenue, for the use of the Commonwealth, within the time prescribed by this act for making such annual report, *a State excise tax* at the rate of ... eleven and one-half percent (11½) for the year 1969 and thereafter, *upon such annual net earnings or income for the privilege of doing business in the Commonwealth.*

....

(d) Net earnings or income or net operating loss shall be determined in accordance with generally accepted prin-

ciples of accounting, either on a cash or accrual or combined cash and accrual basis, depending on the method of bookkeeping employed by each mutual thrift institution, and in computing such net earnings or income or net operating loss, amounts credited or paid as dividends or interest to shareholders, holders of accounts or depositors shall be included among the allowable deductions.

. . . .

(e) Mutual thrift institutions subject to the provisions of this act shall be exempt from all other corporate taxes imposed by the Commonwealth for State purposes, and from all local taxation imposed by political subdivisions of this Commonwealth under the authority of the laws of this Commonwealth, except taxes on real estate or transfers thereof.

72 P.S. § 1986.3(b), (d), (e) (Supp.1985) (repealed 1983) (emphasis added).

On its face, the MTITA is characterized as "a State excise tax ... for the privilege of doing business in the Commonwealth." 72 P.S. § 1983.3(a), (b). It is well-established, however, that while the legislature's designation is entitled to weight, "in the last analysis the nature of the tax depends not upon its label but upon its incidence, *i.e.*, its practical operation and effect." *Commonwealth v. Eastern Motor Express, Inc.*, 398 Pa. 279, 297, 157 A.2d 79, 89 (1959) (citations omitted). "If, therefore, in reality, *i.e.*, in its practical operation and effect, the tax is not what it purports to be, the realities control." *Commonwealth v. Eastman Kodak Co.*, 385 Pa. 607, 612, 124 A.2d 100, 102, *cert. denied*, 352 U.S. 952, 77 S.Ct. 326, 1 L.Ed.2d 243 (1956) (citations omitted). .

From the language of subsection (b) of section 3 of the MTITA it is unmistakeably clear that the tax being imposed is not, in its practical operation, an excise tax on the privilege of conducting business but rather a tax *"upon ... net earnings or income."* 72 P.S. § 1986(3)(b) (emphasis added). Nevertheless, the Commonwealth attempts to argue that the tax in question is an indirect privilege tax

*measured* by the exercise of the mutual thrift association franchise, *i.e.*, by its net income. A similar argument was recently rejected by this Court in *Commonwealth Securities and Investments, Inc. v. Commonwealth,* 511 Pa. 376, 514 A.2d 1373 (1986), *aff'g per curiam,* 88 Pa.Commw. 184, 488 A.2d 1187 (1985). That case involved the applicability of Act 94's tax exemption to the taxation of Commonwealth obligations under the Corporate Net Income Tax statute, Act of March 4, 1971, P.L. 6, No. 2, art. IV, § 401 *et seq., as amended,* 72 P.S. § 7401 *et seq.* (Supp.1987). That statute, like the MTITA, characterized its tax as a "State excise tax" for the privilege of conducting business activities in this Commonwealth. A unanimous Commonwealth Court, in an opinion which we adopted in our *per curiam* order of affirmance, cogently stated:

> [T]he Commonwealth's reliance on the statement of rationale contained in Section 402 of the Act of March 4, 1971, must be unavailing. To be sure, as a Legislature there states, corporate citizens must, through taxation in its various forms, pay for the privilege of doing business, carrying on activities, and owning property in this Commonwealth. *The issue is not, however, the rationale for exacting the payment but the subject of the exaction.* From our review of the whole of the statutory provisions comprising the Corporate Net Income Tax, we have no doubt that the subject of the tax is corporate net income. We must conclude that with respect to the Corporate Net Income Tax, "[t]here is no economic consequence that follows necessarily from the use of the particular words, 'privilege of doing business,' and a focus on that formalism merely obscures the question...." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 288 [97 S.Ct. 1076, 1083, 51 L.Ed.2d 326] (1977).
>
> 88 Pa.Commw. at 197–198, 488 A.2d at 1193. (emphasis added).

We once again embrace this reasoning and hold that the MTITA imposes a direct tax on net income.

Because the MTITA imposes a direct tax on net income, it necessarily follows that the inclusion of interest on Com-

monwealth obligations in the computation of net income would violate Act 94 because that interest would be made subject to taxation. That result is clearly illustrated in the instant case. The entire increase in First Federal's 1972 tax bill, and Eight Thousand Six Hundred Eighty-nine Dollars and Sixty-three Cents ($8,689.63) of the increase in its 1973 tax bill, represent tax on the interest on Commonwealth obligations added by the Department of Revenue to First Federal's reported net income. We conclude, therefore, that First Federal is not liable for those additional sums.

*Dale National Bank v. Commonwealth*, 502 Pa. 170, 465 A.2d 965 (1983), on which the Commonwealth relies, does not compel a contrary conclusion. The *Dale* Court merely stated that Act 94, unlike a federal counterpart, "does not contain a sweeping prohibition against 'direct or indirect consideration' of state and municipal obligations...." *Id.*, 502 Pa. at 177, 465 A.2d at 968. The statute there in question, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7701 (Supp.1987), imposed a tax on the actual value of the outstanding capital stock of state and national banks. We held that Act 94 did not preclude consideration of the value of Commonwealth obligations in determining the actual value of state bank shares. An understanding of this Court's rationale in reaching that conclusion is crucial:

[S]ection 2 of the Act of August 31, 1971, merely provides that "all [state and municipal] obligations, their transfer, and the income therefrom ... shall at all times be free from taxation." Here, it is clear that the bank shares tax is imposed on capital owned and employed by petitioner in its banking operations, *which capital is a property interest separate from the state and municipal obligations themselves.*

*Id.*, 502 Pa. at 177, 465 A.2d at 968 (emphasis added). Thus it is clear that *Dale* stands for the proposition that Commonwealth obligations may be considered in valuing *other property* subject to taxation, not that those obligations may themselves be taxed.

The Commonwealth makes the additional argument that Act 94 applies only to taxation of Commonwealth obli-

gations for personal income tax purposes. Such a strained construction finds no support in the clear language of Act 94 and was implicitly rejected in *Commonwealth Securities and Investments, supra,* in which corporations were afforded the benefits of the Act. Moreover, Act 94 explicitly excludes estate and inheritance taxes from its operation. Since no exception was made in the case of the MTITA, it is to be presumed that the legislature did not intend one. *See, e.g., Pane v. Commonwealth, Department of Highways,* 422 Pa. 489, 222 A.2d 913 (1966); *Cali v. City of Philadelphia,* 406 Pa. 290, 177 A.2d 824 (1962); *Commonwealth ex rel. Maurer v. Witkin,* 344 Pa. 191, 25 A.2d 317 (1942).

Accordingly, for the foregoing reasons, the Order of the Commonwealth Court is reversed, the Orders of the Board of Finance and Revenue are vacated, and this matter is remanded to the Department of Revenue for resettlement in accordance with this opinion.

McDERMOTT and ZAPPALA, JJ., did not participate in the consideration or decision of this case.