586 A.2d 1000

**FIRST TRUST SAVINGS BANK, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 31, 1990.

Decided Feb. 4, 1991.

472

John F. Stoviak, with him, Timothy W. Callahan, II and Mary G. March, Saul, Ewing, Remick & Saul, Philadelphia, for petitioner.

Michael A. Roman, Sr. Deputy Atty. Gen., and Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for respondent.

Before CRAIG, President Judge, and DOYLE, PALLADINO, McGINLEY, PELLEGRINI, KELLEY and BYER, JJ.

PALLADINO, Judge.

First Trust Savings Bank (Petitioner) filed in our original jurisdiction a petition for review in the nature of a) a declaratory judgment and b) an injunction challenging the constitutionality of certain amendments to the Mutual Thrift Institutions Tax Act (MTITA).[1] Petitioner seeks summary relief pursuant to Pa.R.A.P. 1532(b).[2]

The pertinent facts[3] are as follows. Petitioner is a state-chartered savings bank and is successor in interest to First Federal Savings and Loan of Pennsylvania. In 1987, as a result of the supreme court's decision in *First Federal Savings and Loan of Philadelphia v. Commonwealth*, 515 Pa. 369, 528 A.2d 942 (1987), the Department of Revenue (Department) was ordered to resettle Petitioner's tax under the MTITA. The supreme court held that the Department's inclusion of interest that Petitioner earned from commonwealth obligation bonds in the tax base calculation for the MTITA tax violated the exemption provisions of the Act of August 31, 1971, P.L. 395, § 2, 72 P.S. § 4752-2 (Act 94).[4]

1. Act of June 22, 1964, P.L. 16, §§ 1–6, *as amended,* 72 P.S. §§ 1986.1–1986.6 (Supp.1985), superseded by Act of December 1, 1983, P.L. 228, § 7, *as amended,* now Article XV of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, Art. XV, §§ 1501–1506, *as amended,* 72 P.S. §§ 8501–8506.

2. Pa.R.A.P. 1532(b) states in pertinent part as follows:
   (b) Summary Relief. At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear....

3. The recited facts of this case are derived from Petitioner's petition for review and application for summary relief, the Commonwealth's answers thereto and the parties respective requests for admissions to which each party failed to respond or object within the time set forth in Pa.R.C.P. No. 4014(b). Even though both parties served upon each other requests for admission and neither party responded to those requests, none of the requests for admissions are contradictory and we will accept the propositions set forth as true. *See Poli v. South Union Township Sewage Authority,* 56 Pa.Commonwealth Ct. 62, 424 A.2d 568 (1981).

4. Section 2 of Act 94 states in pertinent part as follows:
   Notwithstanding the provisions of any law presently or hereafter enacted to the contrary, all obligations, their transfer and the income therefrom (including any profits made of the sale thereof), issued by the Commonwealth, any public authority, commission,

As ordered by the supreme court, the Department resettled Petitioner's tax under the MTITA recognizing that interest from commonwealth obligation bonds is tax exempt. The Department paid Petitioner all refunds due plus interest and allowed tax reductions in the aggregate amount of $46,079,748 plus appropriate interest to all MTITA taxpayers as a result of the *First Federal* decision.

In 1988, the General Assembly added section 8506 [5] to the MTITA which states in pertinent part as follows:

(a) The Department of Revenue shall ascertain the total amount of revenue, realized or unrealized, that was lost for all taxable years beginning before January 1, 1987, as a result of the decision of the Supreme Court of Pennsylvania in *First Federal Savings and Loan Association of Philadelphia v. Commonwealth*, 515 Pa. 369 (1987). In ascertaining this amount, the department shall consider any refunds including interest paid, granted to institutions as well as any reductions in settled or resettled taxes or other reductions which arose or are supported by the First Federal decision. The department shall also ascertain the difference in the revenue produced by the tax imposed by this article for the taxable years beginning in 1987, 1988, 1989 and 1990 [6] at the rate of twenty per cent and the revenue which would have been received if the tax rate was set at twelve and one-half per cent for

board or other agency created by the Commonwealth, any political subdivision of the Commonwealth or any public authority created by any such political subdivision, shall at all times be free from taxation for State and local purposes within the Commonwealth except that any such obligations, which prior to the effective date of this act were subject to inheritance and estate taxation under the provisions of other existing acts of the General Assembly, shall continue to be subject to such taxation and any obligations issued after the effective date of this act which, but for this act, would be subject to inheritance and estate taxation, shall be subject to such taxation.

5. Act of October 14, 1988, P.L. 737, § 4 (Act 106), *as amended*, 72 P.S. 8506.

6. The general assembly amended the MTITA to extend the tax to include the taxable years beginning in 1989 and 1990. Act of July 1, 1989, P.L. 95, § 9 (Act 21).

such taxable years. After such information has been compiled and determined, the department shall reduce the rate of the tax imposed by this article for the taxable year beginning in 1987, 1988, 1989 and 1990 to the nearest one-tenth of a percent in order that the revenue resulting from the rate of tax in excess of twelve and one-half per cent equals the forgone tax revenues due to the First Federal decision as ascertained pursuant to this section. . . .

Act 106 also amended the MTITA to raise the tax rate from 11.5% to 20% for the fiscal years 1987 and 1988, to reduce the rate from 20% to 12.5% for the fiscal years 1989 to 1991 and to return the rate to 11.5% for the the fiscal year 1992 and thereafter.[7]

In its petition for summary relief, Petitioner raises the following issues: 1) whether the amendments to the MTITA violate Petitioner's due process rights; 2) whether the amendments to the MTITA violate the doctrine of separation of powers; and 3) whether the amendments to the MTITA violate Petitioner's rights under Act 94.

■ Initially we note that summary relief under Pa.R. A.P. 1532(b) should be granted only if there exists no factual dispute and the right of the applicant thereto is clear. *Shoats v. Owen,* 128 Pa.Commonwealth Ct. 427, 563 A.2d 963 (1989).

■ As to the first issue, Petitioner argues that the amendments to the MTITA deprive Petitioner of vested legal rights in the judgment awarded by the supreme court in *First Federal* in violation of the due process clauses of the United States and Pennsylvania constitutions. Petitioner asserts that the amendments to the MTITA, which raised the tax rate, are a blatant attempt to recapture revenue to which the commonwealth never had a right under Act 94. Petitioner relies upon *First National Bank of Fredricksburg v. Commonwealth,* 103 Pa.Commonwealth Ct. 337, 520 A.2d 895 (1987), *aff'd,* 520 Pa. 244, 553 A.2d 937 (1989).

7. Section 3 of Act 106, 72 P.S. § 8502(a).

In *Fredricksburg,* suit was brought for recovery of a Bank Shares Tax [8] that was determined to be invalid by the supreme court in *Dale National Bank v. Commonwealth,* 502 Pa. 170, 465 A.2d 965 (1983). In *Dale,* the court held that inclusion of the value of federal obligation bonds in the calculation of the Bank Shares Tax violated federal law and ordered a resettlement of the tax obligations. After the *Dale* decision, the General Assembly enacted the Single Excise Tax [9] for the express purpose of providing revenues to match those lost because of the *Dale* decision. The Single Excise Tax was applicable only to those banks which applied for a refund under the *Dale* decision and was applied directly to the refund amount so that, upon a bank's application for the *Dale* refund, the Single Excise Tax was imposed and the net balance due the bank was $0.00. The bank asserted that the Single Excise Tax was unconstitutional and this court held that the Single Excise Tax violated the bank's due process rights by attempting to extinguish a cause of action after it had accrued.

*Fredricksburg* is inapposite to the case before us. First, it is clear that the judgment awarded to Petitioner in the *First Federal* decision was satisfied in full by either direct refunds or excusing other tax due. Therefore, there is no judgment that is impaired or cause of action extinguished by the amendments to the MTITA. Further, the Single Excise Tax invalidated in *Fredricksburg* was levied upon only those banks which applied for a *Dale* refund. The amended MTITA applies to all thrift institutions. In the case before us, there is no attack on a sum certain due to Petitioner based upon its judgment. In short, the amended MTITA is nothing more than a tax increase on the thrift industry. Certainly the stated objective of the amended MTITA does not impair the broad taxation powers of the General Assembly. *See Aldine Apartments Co. v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981) which held

---

**8.** Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7701–7706.

**9.** Section 7 of the Act of December 1, 1983, P.L. 228, *formerly* 72 P.S. §§ 8301–8309, repealed by the Act of July 1, 1989, P.L. 95 § 8.

that the legislature must possess wide discretion for the purposes of taxation subject to the requirements of equal protection and uniformity. Therefore, we hold that the amended MTITA does not infringe upon Petitioner's due process rights.

■ As to the second issue, Petitioner argues that the General Assembly's amendment of the MTITA for the express purpose of recovering funds lost because of the *First Federal* decision is an unconstitutional encroachment upon the powers of the judiciary. Petitioner cites *Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780 (1977), for the proposition that final judgments are not to be interfered with by legislative fiat. As stated above, the *First Federal* judgment has been fully satisfied by the Department. By amending the MTITA, the General Assembly does not interfere with a final court judgment but merely raises tax rates. Through this declaratory judgment and injunction action, Petitioner seeks permanent immunity from tax increases. The practical effect of the *First Federal* decision was to create a shortfall in anticipated revenues. To adopt Petitioner's reasoning would be to prohibit the General Assembly from ever again seeking an increase in revenue from the thrift industry. This court simply does not have the authority to so limit the taxing powers of the General Assembly. *See Aldine.* Therefore, we hold that the amendments to the MTITA do not violate the separation of powers doctrine.

■ As to the third issue, Petitioner argues that the amendments to the MTITA violate Act 94. Petitioner asserts that the amended MTITA evades the express mandate of Act 94 and attempts to impose a tax on Commonwealth obligations.

The amended MTITA merely increases the tax rate which is imposed upon the net income received or accrued by thrift institutions during a tax year. Because of the *First Federal* decision, interest from commonwealth obligations is excluded from the thrift's net income calculation. No section

of the amended MTITA attempts to tax the interest earned from commonwealth obligations. We hold that the amended MTITA does not violate Act 94.

Accordingly, Petitioner's application for summary relief is denied.

## ORDER

AND NOW, February 4, 1991, First Trust Savings Bank's application for summary relief pursuant to Pa.R.A.P. 1532(b) is denied.

DOYLE, J., dissents.