The School District of Philadelphia and Thomas W. Rogers, Appellants, *v.* Damico, Inc., Appellee.

Argued October 7, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS and BLATT. Judge KRAMER did not participate.

*Robert T. Lear,* with him *Edward B. Soken,* for appellants.

*Marvin Comisky,* with him *Alan Gershenson,* and, of counsel, *Blank, Rome, Klaus & Comisky,* for appellee.

OPINION BY JUDGE WILKINSON, November 14, 1974:

This case challenges the constitutionality of the Philadelphia Business Use and Occupancy Tax enacted by the City Council on June 4, 1970 (Bill No. 1860),[1] authorizing the imposition of such a tax by the Board of Education of the School District of Philadelphia as it is applied to appellee. That this tax is constitutional in its general application was decided by the Pennsylvania Supreme Court in *Wanamaker v. Philadelphia School District,* 441 Pa. 567, 274 A. 2d 524 (1971). That taxing legislation may be constitutional in its general application but unconstitutional in its application to a particular taxpayer is clear. Indeed, appellants do not contend that *Wanamaker* is controlling other than as to the nature and subject of the Business Use and Occupancy Tax and agree that "the basic issue in this case is whether the formula used to 'measure' the amount of tax to be paid is constitutional as applied to this taxpayer."

This action was instituted by a complaint in equity to enjoin the collection of the tax from the plaintiff. The matter was decided by the lower court based on a

---

[1] The pertinent parts of Bill No. 1860 are quoted in footnote 2 of *Wanamaker v. Philadelphia School District,* 441 Pa. 567, 569-71, 274 A. 2d 524, 525 (1971).

stipulation of facts and a small amount of uncontested and uncontradicted testimony on the nature of the structure, its use, and the method used in the assessment. The Chancellor granted the injunction with a decree nisi. Exceptions were filed and were dismissed by a three-judge court en banc which entered a final decree granting the permanent injunction. This appeal followed and we must affirm.

The general law in Pennsylvania with regard to the requirement of uniformity in both property and excise taxes as mandated by Article VIII, Section 1, of the Pennsylvania Constitution, known as the Uniformity Clause, is so ably, completely and currently discussed in the majority, concurring and dissenting opinions in *Wanamaker* that it would be redundant to repeat it here. The law's requirement of uniformity as applied to the facts in this case is what we must decide, aided by the appropriately short but complete briefs of counsel and the scholarly opinion of the Chancellor, Judge TAKIFF, speaking for a unanimous three-judge court en banc.

Appellee leases and operates a parking garage at 17th and Market Streets in the City of Philadelphia. The garage is a separate and distinct part or section of a larger office building. The total building is 32 floors with one section only five floors. The garage occupies all of the second, third, fourth and fifth floors of both sections and part of the first floor of the five-floor section. The garage area does not have partitions for rooms, insulation, heat, air conditioning, glass, floor or ceiling finish and, as compared to the office area or section, fewer electrical outlets and fixtures. Obviously, the construction and maintenance cost of this garage area is only a fraction of that of the office section. The stipulation and testimony set forth the detailed figures, but it is sufficient here to summarize that the appellee uses approximately 20% of the total square foot space

of the entire building and, under the formula required by Bill No. 1860, is required to pay approximately 20% of the tax on the entire building. However, the rent he pays for the use of this space is only approximately 3% of the total rent paid for the use of the entire building.

A real estate assessor with the City of Philadelphia testified as to the assessment of this property. He testified that the assessments for the period involved were:

|      | Land | Building | Total |
|------|------|----------|-------|
| 1970 | $2,260,400 | $12,128,900 | $14,389,300 |
| 1971 | $2,421,800 | $12,128,900 | $14,550,700 |
| 1972 | $2,421,800 | $12,602,000 | $15,023,800 |

In making the assessment on the building, the assessor testified: "We separated this into two building rates." The garage area was listed at $4.00 a square foot for the entire period and the office section at $12.00 a square foot in 1970 and 1971, but $12.50 a square foot in 1972. The entire cross-examination of this witness by the appellants was: "By MR. LEAR: (Counsel for defendants) Q. When you do a breakout like, how far do you break the building down? Did you just do this for the garage section and the upper section? A. That's all. Q. Or, do you further break down the upper floors? A. No, no, we don't. Q. Do you ever break them down more specifically than that? A. No, we don't. MR. LEAR: All right. Thank you."

Finally, the testimony is that it would cost approximately $12.00 a square foot to convert the garage space into office space comparable with the remainder of the building.[2]

___

[2] The testimony is that costs were obtained for the conversion of the fifth floor to office space. The fundamental unfairness and inequity of the tax as appellants would apply it to appellee is emphasized by pointing out that if the fifth floor were withdrawn from the use of appellee and converted to office space, the tax on appel-

Probably the most quoted and cited recent statement of the fundamental nature of the requirement of the Uniformity Clause in the Pennsylvania Constitution is contained in *Allentown School District Mercantile Tax Case,* 370 Pa. 161, 170, 87 A. 2d 480, 484 (1952): "While taxation is not a matter of exact science and perfect uniformity and absolute equality in taxation can rarely ever be attained . . . , the imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification, is prohibited: Cf. Com. v. Overholt & Co., Inc., 331 Pa. 182, 190-191, 200 A. 849; Pollock v. Farmers Loan and Trust Co., 157 U.S. 429, 599. . . . Moreover while reasonable and practical classifications are justifiable, where a formula or method of computing a tax will in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated. Turco Paint & Varnish Co. v. Kalodner, 320 Pa. 421, 184 A. 37; Hans Rees' v. North Carolina, 283 U.S. 123. . . ." (Citations omitted.)

*Commonwealth v. Overholt & Co., Inc.,* 331 Pa. 182, 200 A. 849 (1938), was a case where the Commonwealth levied a "floor tax" on the storage of spirituous and vinous liquors within the Commonwealth without regard to the value of the liquors. The floor or storage tax was at the rate of $2.00 per gallon without regard to the liquor's value which varied from forty cents to $16.00 a gallon. The court held the tax unconstitutional, stating: "Uniformity of taxation means equality of tax burden. A tax to be uniform must operate alike

lee for the use of the remaining garage space would be substantially increased because the total value of the building is increased by reason of the withdrawal of space from his use and its conversion to office space.

on the classes of things or property subject to it. The tax herein challenged presents an outstanding example of a legislatively imposed inequality of burden, and to protect the citizen against it is a judicial duty." *Overholt, supra,* 331 Pa. at 191, 200 A. at 853.

Although appellants never discuss or distinguish *Overholt* specifically, they would dismiss it from consideration because they say it concerns property taxes, the subject of which is the property itself. The Supreme Court carefully notes in its opinion that it was on oral argument that the Attorney General "conceded that the challenged tax was a property tax." Nevertheless, the tax was expressly levied on storage and collected from the bailee. In the instant case, the tax is levied on the use and collected from the tenant. Further, as expressly noted in *Overholt,* conceding it to be a property tax rather than an excise tax merely made its lack of uniformity much more apparent: "This concession, which the facts of the case clearly warranted, greatly simplifies the problem, for whether or not a certain property tax is so drafted or administered as to violate the constitutional requirement of uniformity is susceptible of almost mathematical demonstration." *Overholt, supra,* 331 Pa. at 189, 200 A. at 852.

Lack of uniformity is difficult, if not impossible, to prove in most excise tax cases, but the present case presents the glaring example where it not only can be and has been proved, but it has been proved by the use of the appellants' assessment records.

Since we have concluded that the lower court was correct and must be affirmed when it enjoined the imposition and collection of this tax as applied to appellee "until there is a reassessment and recalculation of the tax formula which takes into consideration the separable segments of the building," because to apply it without such reassessment and recalculation violates Section 1, Article VIII, of the Pennsylvania Constitu-

tion, it is unnecessary for us to consider whether it also violates any of the provisions of the United States Constitution.

Affirmed.

———

DISSENTING OPINION BY PRESIDENT JUDGE BOWMAN:

I dissent. As the majority recognizes, our Supreme Court in *Wanamaker v. Philadelphia School District*, 441 Pa. 567, 274 A. 2d 524 (1971), declared the tax in question constitutional against an attack on grounds of want of uniformity. In doing so, our Supreme Court characterized the tax as a privilege tax on the use of real estate. The majority of this Court now declare that the formula prescribed "to measure" the tax is unconstitutional for want of uniformity as said measure is applied to the contesting taxpayer.

The enabling ordinance of the City Council of Philadelphia (Bill No. 1786, amending Section 19-800 of The Philadelphia Code adopted June 4, 1970), in pertinent part, provides as follows:

"(2) Imposition of the Tax. The Board of Education of the School District of Philadelphia is authorized to impose a tax for general public school purposes on the use or occupancy of real estate within the School District of Philadelphia during the tax year beginning July 1, 1970, for the purpose of carrying on any business, trade, occupation, profession, vocation, or any other commercial or industrial activity. This tax is imposed on the user or occupier of real estate.

. . . .

"(4) Rate of Tax. The tax authorized by this section shall be measured by the assessed value of the real estate at a rate not to exceed $1.25 per $100 of the assessed value of real estate as most recently returned by the Board of Revision of Taxes. The tax to be paid by the user or occupier shall be computed as follows:

$$\frac{\text{Square feet occupied or used}}{\text{Total square feet available for use or occupancy on the real estate}} \times \text{Assessed value} \times \text{Rate of Taxation} \times \frac{\text{Days of actual use or occupancy}}{360}$$"

All property within the County of Philadelphia made taxable by law is to be valued and assessed at actual value. In determining actual value, each parcel shall be separately assessed as to ground and building and other improvements. The supporting record of assessment, in addition to showing in detail the description, character and size of the land and building or other improvements, shall set forth "the basis upon which such assessment was made." Act of June 27, 1939, P. L. 1199, *as amended*, 72 P.S. §5341.1 et seq.

As the enabling ordinance discloses, and as the Supreme Court held in *Wanamaker*, the tax is a privilege tax upon the use of real estate. The *rate* of tax is not questioned in terms of uniformity, and if the building assessment is constitutionally uniform—likewise not here contested—then both the rate and measure of the tax must necessarily be uniform.

But the majority find a want of uniformity in the measure of the tax predicated upon testimony of an assessor that in determining the assessed value of the building in question, there was a "breakout" into "two building rates," one for the portion used as a parking area, and the other for the remainder of the building used for office space. I view this testimony as totally irrelevant, not to mention incomprehensible. If I understand its import and if it is relevant, then, indeed, to search out and afford controlling significance to the host of factors that are considered in determining assessed value just as surely produces a total want of uni-

formity of this tax as the majority assigns to the measure of the tax, rather than the tax itself.

Traditionally sanctioned methods of arriving at actual value for tax assessment purposes, such as use of capitalization of income less operation costs, particularly as utilized for multi-use or multi-purpose commercial property, could produce a host of "breakouts" into two or more "building rates," the most common example of which would be commercial property utilized on the lower floor for retail purposes with the remainder devoted to other purposes. A "breakout" of rental income, if I understand the majority position, would produce an unconstitutional measure of the tax as applied to those who pay less rent in a particular building.

In my view, the measure of the tax—the assessed value of the building—is just that and cannot be any one or more of the factors or elements properly considered by the assessing authorities in determining actual value from which assessed value is derived.

I would reverse the lower court and find the tax and its measure to be uniform as applied to the taxpayer in this case.

Judge MENCER joins in this dissent.