559 A.2d 513

CITY OF PITTSBURGH, a municipal corporation, and Richard S. Caliguiri, an individual and Mayor, City of Pittsburgh,

v.

COMMONWEALTH of Pennsylvania, Richard L. Thornburgh, Governor, Commonwealth of Pennsylvania, and James I. Scheiner, Secretary of Revenue, Commonwealth of Pennsylvania, Appellees.

Appeal of CITY OF PITTSBURGH at No. 2 W.D. Appeal Docket 1988.

Appeal of Richard S. CALIGUIRI, an individual and Mayor, City of Pittsburgh at No. 25 W.D. Appeal Docket 1988.

Supreme Court of Pennsylvania.

Argued Sept. 29, 1988.

Decided May 31, 1989.

D.R. Pellegrini, City Sol., George R. Specter, Deputy City Sol., City of Pittsburgh, Dept. of Law, Pittsburgh, for appellants.

LeRoy S. Zimmerman, Atty. Gen., Susan J. Forney, Senior Deputy Atty. Gen., Michael L. Harvey, Deputy Atty. Gen., John G. Knorr, Chief Deputy Atty. Gen., Harrisburg, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

The City of Pittsburgh and its Mayor [1] appeal from the Order of the Commonwealth Court sustaining the Commonwealth's preliminary objections in the nature of a demurrer. 112 Pa.Cmwlth. 188, 535 A.2d 680. The Appellants initiated this litigation by filing a Petition for Review seeking a declaration that § 14 of the Local Tax Enabling Act (LTEA), 53 P.S. § 6914, and § 302(a)(7) of the Home Rule Charter and Optional Plans Law (HRC), 53 P.S.

---

1. Mayor Richard Caliguiri died on May 6, 1988.

22

§ 1–302(a)(7), were unconstitutional as violative of the Uniformity Clause of the Pennsylvania Constitution (Art. VIII, § 1) and equal protection clause of the Fourteenth Amendment of the United States Constitution. Named as parties were the Commonwealth, the Governor and the Secretary of Revenue. All defendants filed preliminary objections contending that inter alia, the City was barred from invoking either state or federal constitutional protections, the City lacked standing to assert the constitutional rights of its residents, the Governor and Secretary of Revenue were not proper parties and the classifications distinguishing between resident and non-resident wage earners was valid. Commonwealth Court sustained all the preliminary objections and dismissed the Petition for Review. This direct appeal followed (*See* 42 Pa.C.S. § 761(a)(1)).

█ The gravamen of this controversy is the inability of the City to collect its 1.125 percent wage tax from non-City residents who work within the City's boundaries. The Appellants argue that the General Assembly has adopted legislation which effectively prohibits uniform application of the local tax burden. Since the Appellants are attacking the constitutionality of properly adopted tax legislation, it is incumbent upon them to demonstrate that the classification chosen by the legislature is unreasonable. *F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971). To meet this burden the Appellants' evidence must establish that the subject tax legislation *"clearly, palpably and plainly* violates the constitution." *Commonwealth v. Life Assurance Co. of Pa.*, 419 Pa. 370, 377, 214 A.2d 209, 214 (1965) appeal dismissed 384 U.S. 268, 86 S.Ct. 1476, 16 L.Ed.2d 524 (1966).

The LTEA sets forth the scheme of local taxation in this Commonwealth. Under § 6902 of LTEA, political subdivisions, such as the City of Pittsburgh, may levy, assess and collect taxes for general revenue purposes from persons within their boundaries. Subsection 5 sets forth a prohibition against taxing of non-residents, but is limited to school districts of the second, third, and fourth classes. Section 6908(3) limits the rate of taxation a municipality may assess

against an individual on wages, salaries, commissions, and other earned income to one percent. Finally, § 6914 requires that a non-resident taxpayer be given credit by the municipality in which that taxpayer works for any taxes paid to the municipality in which he lives.

The City of Pittsburgh, however, is a home rule community pursuant to the HRC. Even though a Home Rule Charter permits an optional form of government, under no circumstances may the Home Rule Charter vest any greater powers or authority in the local municipality with regard to the rate for personal taxes charged to non-residents. 53 P.S. 1–302(a)(7). Notwithstanding the adoption of a Home Rule Charter, LTEA controls the rate of tax permissible with regard to non-residents. As indicated, the maximum rate permissible under § 6908(3) of LTEA is one percent.

It is this taxation scheme that the City and Mayor are attacking as unconstitutionally impermissible. In support of their position, the Appellants rely upon *Danyluk v. Johnstown*, 406 Pa. 427, 178 A.2d 609 (1962) and *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985).

In *Danyluk*, we held that the City of Johnstown's attempt to tax non-residents violated the uniformity provision of our constitution. The City had attempted to avoid this obvious result by formulating the assessment as an occupation tax. In actuality, the City was attempting to levy a direct tax on non-residents. In refusing to fall prey to this attempt we stated:

"Capitation or poll taxes are taxes of a fixed amount upon all persons, or upon all the persons of a certain class, within the jurisdiction of the taxing power, without regard to the amount of their property or the occupations or business in which they may be engaged." 51 A.L.R. § 38, p. 66, 1 COOLEY TAXATION § 40, p. 122 (4th ed. 1924). The tax is imposed because of the protection which a governmental unit affords to persons residing therein, and is designed primarily to require contribution from all residents for the services rendered them by the taxing authority. Consequently, per capita, capitation or

head taxes can be imposed only upon residents of the particular political subdivision since residence alone furnishes the contact necessary to render a person amenable to the direct levy.

406 Pa. at 430, 178 A.2d at 610. We thus concluded that the City's basis for the classification was unreasonable and violative of Article 8, § 1 of our Constitution.

The Appellants now argue that *Danyluk* supports its position because in that case we looked unfavorably upon residency as a classification. Both argue that we held in *Danyluk* that a classification based upon residency alone was unreasonable and violative of the uniformity clause. Although the premise upon which the Appellants' argument is based is an accurate interpretation of *Danyluk*, its conclusion is not. In *Danyluk* we rejected an attempt to levy a direct tax on non-residents concluding that non-residents and residents do not receive the same benefits from the appropriate taxing authorities. In fact, we held contrary to the appellants' interpretation concluding that residency is a legitimate basis for imposing a direct levy. Accordingly, the Appellants' reliance upon *Danyluk* is misplaced.

More recently, in *Leonard v. Thornburgh, supra,* we reviewed the City of Philadelphia's Wage Ordinance No. 1716 and its different treatment of residents and non-residents. The City of Philadelphia had adopted a wage tax rate of $4^5/_{16}$ percent for non-residents in accordance with the Philadelphia Non-resident Wage Tax Cap Act. This rate was almost 1.5 percent lower than that rate levied against city residents. A city resident filed suit arguing that the Philadelphia Non-resident Wage Tax Cap Act and Ordinance 1716 were unconstitutional in that the tax was not uniformly applied to residents and non-residents. Furthermore, the Appellant asserted that the different tax rates denied her equal protection under the Fourteenth Amendment of the United States Constitution. In rejecting both arguments we stated:

Under the equal protection clause, and under the Uniformity Clause, absolute equality and perfect uniformity

in taxation are not required. *Columbia Gas Corp. v. Commonwealth*, 468 Pa. 145, 151, 360 A.2d 592, 595 (1976). In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and " 'reasonable and just' " basis for the difference in treatment. *Aldine Apartments v. Commonwealth*, 493 Pa. [480] at 487, 426 A.2d [1118] at 1121–1122 [1981]. See also, *F.J. Busse Co. v. Pittsburgh*, 443 Pa. at 358, 279 A.2d at 19. Stated alternatively, the focus of judicial review is upon whether there can be discerned "some concrete justification" for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens. *Columbia Gas Corp. v. Commonwealth*, 468 Pa. at 150–153, 360 A.2d at 595–597. When there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Commonwealth v. Staley*, 476 Pa. 171, 180, 381 A.2d 1280, 1284 (1978). See also, *Amidon v. Kane*, 444 Pa. [38] at 55, 279 A.2d [53] at 63 [1971].

507 Pa. at 321, 489 A.2d at 1352.

Applying this analysis we concluded that residents and non-residents utilize city services to different extents, non-residents, in some instances, not at all. As such, residents and non-residents are not similarly situated in this context. Furthermore, we were deeply concerned about the inability of non-residents to protect themselves in the assessment of an appropriate wage tax. We surmised that to avoid abuse of unprotected non-residents, the legislature capped the maximum rate a non-resident could be taxed.

As with *Danyluk*, the City has misconstrued our holding and discussion in *Leonard*. *Leonard* does not mean that the legislature must permit taxation of non-residents if it permits taxation of residents. All *Leonard* holds is that if

the legislature adopts legislation allowing the levying of taxes on non-residents, that classification must be reasonable. The fact that non-residents utilize city services without paying their "fair share" is an argument properly addressed to the legislature not this Court. To suggest that *Leonard* requires the legislature to adopt legislation to permit taxation of non-residents comparable to residents is incorrect. *Leonard* is only applicable after the legislature has performed its constitutional function of weighing various alternatives and interests in determining that the taxation of non-residents is appropriate. The Appellants' reliance on *Leonard* in the case *sub judice* is premature.[2]

Finally, under the present tax legislation, non-residents are assessed taxes but do receive a tax credit for taxes paid in the municipality in which they live. It is possible that the tax rate of the municipality where one resides may be less than one percent thereby obligating the non-resident to pay the difference to the municipality in which that individual works. Accordingly, to say that the non-resident is not required to pay any taxes is inaccurate.

Finding a reasonable basis for the classification, we hold that neither § 14 of LTEA or § 1–302(a)(7) of HRC is violative of either the Uniformity Clause of our Constitution or the Fourteenth Amendment of the United States Constitution.

Affirmed.[3]

PAPADAKOS, J., and STOUT, Former Justice, did not participate in the decision of this case.

**2.** In *Leonard,* non-residents did not challenge the classification on constitutional grounds. Accordingly, nothing in our holding today should be construed as a decision on that precise issue.

**3.** The City also raises the issue of whether it has standing to attack the constitutionality of the noted provisions of LTEA and HRC. Because of our disposition of the constitutional issues in the Mayor's appeal, in which no one questions his standing, it is unnecessary to address the standing issue.