645 A.2d 452

### FIDELITY BANK, N.A., Petitioner,

v.

**COMMONWEALTH of Pennsylvania, acting By and Through the DEPARTMENT OF REVENUE and Robert P. Casey, Governor of the Commonwealth of Pennsylvania, and his successors in office et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 13, 1994.

Decided July 7, 1994.

526

George T. Bell, for petitioner.

Michael A. Roman, Chief Deputy Atty. Gen., Tax Litigation Section, for respondents.

Bryan E. Barbin, for intervenors.

Before CRAIG, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY, NEWMAN, JJ.

PELLEGRINI, Judge.

Before this court are post-trial motions filed by Fidelity Bank, N.A. (Fidelity) and the Commonwealth of Pennsylvania (Commonwealth, collective for all named Respondents) pursuant to Pa.R.Civ.Pro. 227.1 [1] to the decree nisi of this court filed

---

**1.** Pa.R.Civ.Pro. 227.1 allowing post-trial motions within ten days after the filing of a decision in an equity trial is applicable to this action under Pa.R.A.P. 106 because there are no rules within the Rules of Appellate Procedure addressing the challenge of a decision by a judge of the Commonwealth Court in an original jurisdiction proceeding. *Utica Mutual Insurance Company v. Commonwealth, Department of*

December 6, 1993, granting Fidelity's request for a refund of improperly paid bank shares taxes.[2]

Fidelity had filed a petition for review with this court seeking declaratory and injunctive relief. Fidelity contended that certain 1989 amendments to the Tax Reform Code of 1971 (Code)[3] were unconstitutional, and that refunds of bank shares taxes were required rather than credits given under the amendments. The parties submitted the stipulations of fact which we have adopted as our own. In the decree nisi, we ordered that refunds of improperly paid bank shares taxes should be made, but found it unnecessary to address the constitutional challenge to the 1989 amendments.

Both parties filed post-trial motions. Fidelity seeks to modify the order by requiring the Commonwealth to resettle its 1989 bank shares taxes so that credits would not be deleted. Fidelity asserts that if the credits are deleted without resettling the tax, an amount due would show, which would prompt a lien on Fidelity and impair its ability to operate. The Commonwealth asks us to modify the order to allow the credits given in 1989 to satisfy the order for refunds. Both parties ask us to address whether the 1989 amendments to the Code are constitutional.

Shares taxes on banks are based on the number of shares of capital stock subscribed for or issued and their actual value. Section 701 of the Code, 72 P.S. § 7701. In 1983, the United States Supreme Court decided in *American Bank and Trust Co. v. Dallas County*, 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072, *reh'g denied*, 463 U.S. 1250, 104 S.Ct. 39, 77 L.Ed.2d 1457 (1983), that bank shares taxes computed on the basis of the bank's net assets must deduct tax exempt U.S. obligations held by the bank in compliance with 31 U.S.C. § 3124. Because the former shares tax included in the tax base the value of U.S. obligations, the Pennsylvania Supreme Court under-

*Labor & Industry*, 129 Pa.Commonwealth Ct. 637, 566 A.2d 911 (1989), *affirmed*, 527 Pa. 359, 591 A.2d 1052 (1991).

**2.** The decree nisi was a single-judge opinion by Senior Judge Narick.

**3.** Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004.

standably held when it was challenged that the former shares tax on Pennsylvania banks was also unconstitutional. *Dale National Bank v. Commonwealth,* 502 Pa. 170, 465 A.2d 965 (1983). *Dale* required the Commonwealth to refund millions of dollars in taxes to banks. Fidelity was owed a total of $13.7 million.

In response to the claims for refunds after the decision in *Dale,* the General Assembly enacted a one-time single excise tax[4] on banks in 1984 which was exactly equal to the shares tax refund due each bank under the prior court decision. The express purpose of the single excise tax was to provide revenues matching those anticipated through the bank shares tax but lost under the decision in *Dale.* Our Supreme Court found the single excise tax unconstitutional as violative of the Supremacy Clause of the United States Constitution[5] because it was a "thinly veiled attempt" to do indirectly what it could not directly, that is, impose the bank shares tax on U.S. obligations. *First National Bank of Fredericksburg v. Commonwealth,* 520 Pa. 244, 258, 553 A.2d 937, 944 (1989). The court also held that under *Dale,* the banks had an immediate legally-enforceable right to refunds of the improper bank shares taxes.

Responding to the loss of revenue, the General Assembly then enacted the 1989 amendments to Section 701 of the Code, enumerated Act 1989–21, presently being challenged. The amendments to the statute required banks to file an amended 1989 bank shares tax return and, for that year only, increased the tax rate on bank shares to 10.77%, nearly a tenfold increase. The 1989 amendments also changed the tax base from only the average shares values over the current year to

4. Section 7 of the Act of December 1, 1983, P.L. 95, *formerly* 72 P.S. §§ 8301–8309. Section 7 was repealed by the Act of July 1, 1989, P.L. 95.

5. Article VI, Section 2 of the U.S. Constitution provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."

the average shares value from the current year and the preceding five years, with adjustments such as the exemption of federal obligations. The General Assembly also required that banks pay 80% of the tax due before an objection to the validity of the tax rate increase could be brought. Under the amendments, Fidelity owed $41 million of tax liability.

The General Assembly also amended the Code to create a New Bank Tax Credit Law, Sections 1901–1909 of the Code (Article XIX), *as added,* by the Act of July 1, 1989, P.L. 6, 72 P.S. §§ 8901–8909, which provided a tax credit for banks chartered after January 1, 1979. This effect of the tax credit was to distinguish between those banks which would be eligible for a refund because they had paid the unconstitutional tax under *Dale* and those which would not because they were chartered too recently to have incurred the improper tax.[6]

In summary, as a result of the passage of the 1989 amendments as well as the New Bank Tax Credit Law, for the tax year 1989:

- the tax rate on shares was increased to 10.77%;
- the tax base includes the average of share values over six years;
- a bank must pay 80% of the tax due before an objection can be made;
- banks chartered after January 1, 1979, receive a tax credit to offset the increased tax rate.

Fidelity complied with the amendments by filing the amended return and paying 80% of the amount due less a credit for the amount owing Fidelity as a refund (including interest) from the single excise tax. Fidelity then filed an action challenging the taxing scheme of the 1989 amendments which impose a much higher tax rate on only banks entitled to a

6. An Alternative Bank Shares Tax Act, Section 701A to Section 721A of the Code, *as added,* by the Act of July 1, 1989, P.L. 95, 72 P.S. §§ 7701A–7721A, was also enacted but it would take effect only if the shares tax amendments were found to be unconstitutional. Under the alternative shares tax, the liability is based on an average of bank share value over the four quarters of the preceding year, accompanied by a sharp increase of the tax rate on bank shares for three years and a reduction in the fourth year.

refund as unconstitutional either because it violates the right to due process, the Uniformity Clause, the Equal Protection Clause, the Supremacy Clause or the separation of powers doctrine.

In the decree nisi to which the post-trial motions have been filed, we held that the Commonwealth failed to make a refund in the amount of the improperly paid shares taxes and granted Fidelity's request for a refund. We also stated that the constitutional challenges were not ripe for review until after the Commonwealth issues those refunds. Both Fidelity and the Commonwealth now seek to modify the order.

Fidelity contends that the Commonwealth must resettle Fidelity's 1989 bank shares tax liability by the amount they must refund so that Fidelity will not show a debt to the Commonwealth which would be a lien on all of its property and impair its ability to operate its business. Fidelity argues that the constitutional issues can be addressed, otherwise the refund alone fails to provide it meaningful relief, and that the amendments to the bank shares tax is unconstitutional. In its post-trial motion, the Commonwealth contends that it has fully met its obligations to pay refunds by giving a tax credit under the 1989 amendments. It also argues that if a resettlement is ordered as requested by Fidelity, Fidelity will be getting a double return.

## I.

■ As to the issue squarely addressed in the decree nisi of whether the Commonwealth is required to give cash refunds rather than credits to Fidelity and the other banks who paid improper single excise taxes, Fidelity contends that, because in *Fredericksburg,* the Supreme Court held that the banks had an immediate, legally-enforceable right to a refund, the use of credits by the Commonwealth is unconstitutional under federal law and improper under state law.

Fidelity's argument is based on its contention that due process requires that a taxpayer get "meaningful backward-looking relief" when it has paid a tax that is declared unconstitutional, such as the single excise tax struck down in *Freder-*

*icksburg,* citing *McKeeson Corporation v. Division of Alcoholic Beverages & Tobacco,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). "Meaningful backward-looking relief" as required in *McKeeson* is retroactive relief that eliminates the discriminatory tax treatment under the tax provision declared unconstitutional. In *McKeeson,* the Florida courts determined that the excise tax scheme on liquor distributors discriminately favored local products; however, the courts refused to provide any retroactive relief, only enjoining the imposition of the discriminatory part of the tax. The U.S. Supreme Court held that prospective relief alone does not satisfy federal law and required "meaningful backward-looking relief" to rectify the prior unconstitutional deprivation. *Id.* at 31, 110 S.Ct. at 2247. The court then discusses some options that Florida may choose in order to provide the required relief, such as by giving a full refund of the tax payments or by eliminating the difference in taxes by imposing back taxes on the competitors who benefited from the discriminatory taxes. *Id.* at 39–40, 110 S.Ct. at 2251–52. The court does not discuss credits at any time and also states that it is generally the state's duty to craft the appropriate relief under federal and state law. *Id.* at 33, 110 S.Ct. at 2248.

In general, under *McKeeson,* the relief given must be equivalent to the monetary interest lost by the banks because of the requirement to pay the shares taxes prior to challenging the tax scheme, and must adjust the unfair tax burdens imposed under the single excise tax to reverse the discriminatory aspect. Credits provide the exact monetary amount (plus interest) to eradicate the unfair aspect of the prior tax but is applied to present or future assessed taxes rather than handed out in cash form. We believe that this relief fits within the concept of "meaningful backward-looking relief" required under the constitution.

As to propriety of using credits under state law, the use of credits is specifically authorized in the Fiscal Code,[7] 72 P.S. § 1108(b)(1), and may be applied by the Commonwealth or

7. Section 1108(b)(1) of The Fiscal Code, the Act of April 9, 1929, P.L. 343, *as amended.*

used against any tax liability or claim, 72 P.S. § 1108(b)(2). The provision of the Fiscal Code requiring the Board of Finance and Revenue to hear refund petitions specifically allows the Board to refund or to credit the account of the person owed the refund. Section 503(a) of the Fiscal Code, 72 P.S. § 503(a). In *Hotel Casey Co. v. Ross*, 343 Pa. 573, 580, 23 A.2d 737, 741 (1942), cited in *Fredericksburg* for the interpretation of Section 503, stated that if the criteria are met, "the provision for a refund *or credit* is mandatory".

Moreover, in *First Trust Savings Bank v. Commonwealth*, 137 Pa.Commonwealth Ct. 471, 474, 586 A.2d 1000 (1991), *aff'd per curiam*, 530 Pa. 265, 608 A.2d 492 (1992), although it gave the petitioner thrift a refund, the Commonwealth gave credits to all other thrifts due a refund under a prior decision.[8]

**8.** Although not mentioning the word credits, we stated that the Commonwealth "allowed tax reductions" and "excused other tax". *Id.* at 474 and 476, 586 A.2d at 1001, 1003. In *First Trust*, the Commonwealth had amended the Mutual Thrift Institution Tax Act (MTITA), Act of June 22, 1964, P.L. 16, *as amended*, 72 P.S. §§ 1986.1–1986.6 (Supp.1985), superseded by Act of December 1, 1983, P.L. 228, § 7, *as amended*, now Article XV of the Tax Reform Code of 1971, 72 P.S. §§ 8501–8506, to refund to taxpayers the amount of tax improperly attributable to exempt government obligations. A refund was due First Trust, as the successor in interest to First Federal Savings and Loan Association of Philadelphia under *First Federal Savings and Loan Association of Philadelphia v. Commonwealth*, 515 Pa. 369, 528 A.2d 942 (1987), which held that the inclusion of interest that First Federal earned from Commonwealth obligation bonds in the tax base calculation for MTITA tax violated statutory exemption provisions. The amendments to MTITA also raised the tax rate to the level necessary to pay the refunds and meet current budgetary objectives in an express attempt to recover revenue it was required to refund under *First Federal*. *First Trust*, 137 Pa.Commonwealth Ct. at 474–475, 586 A.2d at 1001–02.

In that case, First Trust made due process and separation of powers challenges to the amendments; however, we held that the revisions were constitutionally proper. As to the constitutional argument that the amendments were a blatant attempt to recapture revenue to which the Commonwealth did not have a right, we stated that the judgment awarded in *First Federal* was "satisfied in full by either direct refunds or excusing other tax due" so that no judgment was impaired by the amendments. We also held that legislation merely raising taxes does not violate the separation of powers doctrine, even where the tax increase is on the same class of taxpayers to whom the Commonwealth owed a judgment. *Id.* at 477, 586 A.2d at 1003.

Although not specifically addressing the propriety of credits, we found the tax scheme to recoup the money refunded and credited to be constitutional and found that the prior judgment at issue in that case was fully satisfied by the Commonwealth. The furnishing of a credit as opposed to a refund may satisfy the Commonwealth's duty to refund improperly paid taxes, as long as the provision for credits is constitutional as enacted. Accordingly, we grant the Commonwealth's post-trial motion that credits satisfy its refund obligation and correspondingly deny Fidelity's motion on that issue.

## II.

Fidelity contends that the taxing scheme created by the 1989 amendments and additions to the bank shares tax is unconstitutional because:

- it is not based on current values of the property so that taxpayers with the same current share values may pay different taxes;
- it is retroactive in violation of the due process clause;
- the requirement to pay 80% of the tax before challenging the act violates equal protection;
- it imposes different effective tax rates on new banks in violation of the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the United States Constitution;
- it taxes the same funds which were previously determined that the Commonwealth was not able to tax in violation of the Supremacy Clause and the separation of powers doctrine.

The legislature possesses wide discretion in matters of taxation. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985); *Magazine Publishers of America v. Commonwealth, Department of Revenue*, 151 Pa.Commonwealth Ct. 592, 618 A.2d 1056 (1992). "[T]he challengers of the constitutionality of state or local taxation bear a heavy burden....". *Amidon v. Kane*, 444 Pa. 38, 51, 279 A.2d 53, 60 (1971). The courts will not declare tax legislation unconstitutional unless it

clearly, palpably and plainly violates the Constitution. *Leonard; Magazine Publishers.* Moreover, absolute equality and perfect uniformity in taxation are not required. *Leonard.*

We will address the Supremacy Clause and separation of powers issue separately because it is dependent on the fact that the amendments were enacted in response to the *Fredericksburg* decision.

## A.

 Fidelity argues that the amendments violate the Uniformity Clause of the Pennsylvania Constitution[9] because as a property tax, the bank shares tax must be on relevant current values of taxable property rather than on an average of value over a six-year period.[10] For a tax to be considered uniform, the classification of taxpayers must be reasonable and the tax itself must be applied with uniformity upon similar kinds of businesses or property with substantial equality of the tax burden on all members of the class. *Amidon.* Fidelity's argument is that the tax scheme does not meet the second part of the test for uniformity because under the averaging method, banks with equivalent "current" values may be taxed differently because of the unequal values in the past five years. This, they argue, violates the Uniformity Clause because, although the classification of banks is reasonable, all banks do not equally share the tax burden.

For its contention, Fidelity relies on *Commonwealth v. A. Overholt & Co.*, 331 Pa. 182, 200 A. 849 (1938) and *School District of Philadelphia v. Damico, Inc.*, 15 Pa.Commonwealth Ct. 558, 328 A.2d 190 (1974). Our Supreme Court in *Overholt* determined that a tax imposed per gallon of liquor was not uniform. They held that a property tax must be imposed ad

**9.** The Uniformity Clause of the Pennsylvania Constitution, Article VIII, Section 1, provides:

All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

**10.** The decision in *Dale* established that the bank shares tax was a property tax. *Dale,* 502 Pa. at 176, 465 A.2d at 968.

valorem rather than by reference to the number or weight of the property. It did not interpret the uniformity to require that a tax on value must only be determined by reference to the value in the taxing year, and because the bank shares tax under the 1989 amendments is an ad valorem tax, *Overholt* is unhelpful for Fidelity's argument.

Our decision in *Damico* is more relevant because it relates to whether the calculation of an ostensibly ad valorem tax makes the tax burden unequal. This court stated that "where a formula or method of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated." *Damico*, 15 Pa.Commonwealth Ct. at 562, 328 A.2d at 192 (quoting *Allentown School District Mercantile Tax Case*, 370 Pa. 161, 87 A.2d 480 (1952)).[11] Fidelity argues that the 1989 amendments produce arbitrary and unreasonable results because it ignores current values.

To the contrary, the Commonwealth's public finance witness testified that the use of an averaging methodology discouraged a bank from manipulating its holdings of federal obligations so as to artificially reduce its tax liability and minimize the effect of random disturbances in value. Based on this testimony, the effect of the tax appears to be to reduce the chance of arbitrary or unjust results rather than to produce such violative results. *Damico.* Moreover, except where statutes require that the calculation be on current market value such as in assessments of real property,[12] there is nothing in the Uniformity Clause that requires that the value of the property in the current taxing year be the only consideration for the calculation of actual value.[13] So long as the calculation does

11. In that case, the Philadelphia business and use tax as applied to the lessee and operator of a garage was not uniform because the tax did not take into consideration the use of separable segments of the building, but was constitutional in its general application.

12. *See, e.g.,* Section 402 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–402.

13. Nor does the Equal Protection Clause require that only "current" values may be used. *See Nordlinger v. Hahn,* — U.S. —, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). In *Nordlinger,* the California Constitution,

not produce unreasonably discriminatory results, the method used, including, as here, a six-year average, is well within the province of the legislature to define.

### B.

■ Under the Due Process Clause, Fidelity argues that the taxing scheme violates the rights of banks because it is imposed retroactively, even though taxes previously were reported and paid on the same property in those prior years. Very recently, the U.S. Supreme Court, in *United States v. Carlton*, ── U.S. ──, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994), reaffirmed that the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased. They stated:

> This Court repeatedly has upheld retroactive tax legislation against due process challenge. See, e.g., *United States v. Hemme*, 476 U.S. 558 [106 S.Ct. 2071, 90 L.Ed.2d 538] (1986); *United States v. Darusmont*, 449 U.S. 292 [101 S.Ct. 549, 66 L.Ed.2d 513] (1981); *Welch v. Henry*, 305 U.S. 134 [59 S.Ct. 121, 83 L.Ed. 87] (1938); *United States v. Hudson*, 299 U.S. 498 (1937); *Milliken v. United States*, 283 U.S. 15 [51 S.Ct. 324, 75 L.Ed. 809] (1931); *Cooper v. United States*, 280 U.S. 409 [50 S.Ct. 164, 74 L.Ed. 516] (1930). Some of its decisions have stated that the validity of a retroactive tax provision under the Due Process Clause depends upon whether 'retroactive application is so harsh and oppressive as to transgress the constitutional limitation.' *Welch v.*

after the adoption of "Proposition 13", allowed the real estate tax to be based on acquisition value which meant that new houses or newly-purchased homes were based on a current assessed value, but historic assessments went unchanged on property held by the same owner. The U.S. Supreme Court stated that wide disparities in the assessed values do not necessarily impinge on the constitutional rights of taxpayers so long as the difference in treatment rationally furthers a legitimate state interest. *Id.* at ── U.S. at ──, 112 S.Ct. at 2332, 120 L.Ed.2d at 13. The Supreme Court stated that the standard is especially deferential in the context of complex tax laws, and that the legislature is not required to actually articulate its purpose or rationale. The standard of review requires only that a purpose may conceivably or may reasonably have been the purpose of the legislature. *Id.* ── U.S. at ──, 112 S.Ct. at 2334, 120 L.Ed.2d at 16.

*Henry*, 305 U.S., at 147 [59 S.Ct. at 126], quoted in *United States v. Hemme*, 476 U.S., at 568–569 [106 S.Ct. at 2077–2078]. The 'harsh and oppressive' formulation, however, 'does not differ from the prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733, 104 S.Ct. 2709, 2720, 81 L.Ed.2d 601] (1984). The due process standard to be applied to tax statutes with retroactive effect, therefore, is the same as that generally applicable to retroactive economic legislation:

'Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches....'

—— U.S. at —— – ——, 114 S.Ct. at 2021–22 (quoting *Pension Benefit*, 467 U.S. at 729–30, 104 S.Ct. at 2717–18, quoting *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16–17, 96 S.Ct. 2882, 2892–93, 49 L.Ed.2d 752 (1976)).[14] The issue here then is whether there was a rational legislative purpose in the General Assembly's enactment of the 1989 amendments to the Bank Shares Tax.

In this case, the amendments were intended to recoup an expected shortfall in that year's bank shares taxes, which is a legitimate legislative concern. Moreover, they were enacted as immediately effective on July 1, 1989 and related to the bank shares taxes for 1989, so that the retroactivity was a

14. In *Carlton*, the Supreme Court upheld a 1987 amendment in the Omnibus Budget Reconciliation Act of 1987 that applied retroactively to an estate tax deduction allowed in the Tax Reform Act of 1986 in order to close a loophole. The Supreme Court held that the retroactive application was neither illegitimate or arbitrary because it was enacted to correct what was viewed as a mistake in the original provision that would cause significant, unanticipated revenue losses and because Congress acted promptly and the period of retroactivity was only a little over a year. *Id.* —— U.S. at —— – ——, 114 S.Ct. at 2022–23. The Supreme Court also stated that a taxpayer's reliance on a provision is insufficient to establish a constitutional violation because tax legislation is not a promise and a taxpayer has no vested right in a particular treatment. *Id.* at —— – ——, 114 S.Ct. at 2023–24.

rational method to meet the legitimate purpose of the legislation and the amendments were not so late in coming as to harshly interfere with settled expectations.

Fidelity submits, however, that in addition to applying the amendments retroactively in 1989, there is a more far-reaching retroactive impact because the averaging method imposed taxes on shares that were already taxed in the preceding five years, upsetting settled expectations. In the new calculation, the value of the bank shares is averaged over a six-year period, and that average is taxed as the current shares values. The values of the shares in the preceding five years is part of the calculation *only* to determine a reliable reflection of the value of shares to be taxed in the current year, the shares from previous years are not "retaxed". The purpose of determining a reliable value of property subject to tax is certainly a legitimate purpose and based on the expert testimony this averaging method is a rational means to that purpose. Moreover, the possible taxing schemes discussed in *McKeeson* (*supra* Section I) specifically include retroactively imposing a higher excise tax on taxpayers who have previously paid a tax on those same products in a prior year. *Id.* Accordingly, we find no due process violation in the retroactivity of the taxing scheme imposed by the 1989 amendments.

## C.

Fidelity also makes an equal protection challenge to the appeal procedures established in the 1989 amendments. The amendments required the banks to pay 80% of the tax under the amended 1989 form before an objection to the constitutionality of the amendments could be made. Section 701.3 of the Code, 72 P.S. § 7701.3. As argued by the Commonwealth, the U.S. Supreme Court has held that a state need not provide predeprivation procedures. *McKeeson.* Because of a strong state interest in financial stability, the Supreme Court stated that a state may employ means to ensure timely payment prior to the resolution of any dispute over the validity of the tax. *Id.* 496 U.S. at 37, 110 S.Ct. at 2250–51. Fidelity asserts that banks are the only class of

taxpayers who are required to pay the tax before challenging the statute. However, Fidelity also admitted that banks are a proper distinct classification for taxation. As a distinct class, it can be required to follow different procedures than other classes of taxpayers without violating equal protection.

### D.

■ Fidelity also contends that the New Bank Tax Credit Law is invalid as violative of the Uniformity Clause [15] because it imposes substantially different effective tax rates on new banks as compared to older banks. The bank shares tax is generally imposed on every bank having capital stock and located within the Commonwealth, Section 701 of the Code, 72 P.S. § 7701, and Fidelity admits that the classification of all banks for taxation is valid. However, with the addition of the New Bank Tax Credit Law, new banks were provided a tax credit not based on prior improper payments and not available to older banks.

The New Bank Tax Credit Law was enacted on the same day as the amendments to the bank shares tax that increased the tax rate on banks for 1989. It provides a credit for banks chartered after January 1, 1979, which are those banks that did not pay bank shares tax on U.S. obligations as declared improper in *Dale* or the resulting single excise tax declared invalid in *Fredericksburg*. The effect of amendments and additions was to offset the large tax rate increase for new banks because they would not be receiving credits as satisfaction of the Commonwealth's refund obligation. (Stipulation of Fact # 24). For a tax to meet the requirements of uniformity, the classification must be reasonable and cannot be arbitrary or capricious. *Columbia Gas Transmission Corporation v. Commonwealth*, 468 Pa. 145, 360 A.2d 592 (1976). Additionally, the tax must be applied upon similar kinds of businesses or property with substantial equality of the tax burden on all

---

15. Fidelity also argues that the New Bank Tax Credit Law would violate the Equal Protection Clause of the U.S. Constitution. Allegations of violations of the Equal Protection Clause and the Uniformity Clause are to be analyzed in the same manner. *Magazine Publishers*.

members of the class. *Amidon.* Just because there a difference can be articulated does not mean the difference is one that satisfies the Uniformity Clause. For example, while there are substantial differences between commercial or industrial real estate and residential real estate, to tax them differently has been held to violate the Uniformity Clause. *Appeal of Massachusetts Mutual Life Insurance Company,* 426 Pa. 566, 235 A.2d 790 (1967); *McKnight Shopping Center v. Board of Property Assessment,* 417 Pa. 234, 209 A.2d 389 (1965); *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965). The New Bank Tax Credit Law, particularly Section 1904 of the Code which grants the credits, is invalid under the Uniformity Clause of the Pennsylvania Constitution and the credits given under that statute were unconstitutional.

Although the express intent of the New Bank Tax Credit Law was "to insure the health, stability and growth of the banking industry in Pennsylvania and its attendant benefits to all citizens" by fostering "the establishment and growth of new banks", Section 1902 of the Code, 72 P.S. § 8902, the New Bank Tax Credit Law was, in fact, intended to save banks who were not owed refunds from the substantial tax rate increase in 1989 because the authorized credit amount in that year was twelve million dollars, whereas in 1990 and 1991, the authorized amount was reduced to two million and one million dollars, respectively. Section 1906 of the Code, 72 P.S. § 8906. Based on the effect of this law to offset the increased tax rate in 1989 and that there is no substantial difference between "old" and "new" banks, the separate classification of new banks is not reasonable.

We can see no difference for uniformity purposes based upon when banks are chartered. All banks are regulated, have capital requirements, compete against each other and offer much the same services, no matter when chartered. If we were to adopt a class based solely on when the entity was created, uniformity would be rendered meaningless. If that were a proper basis, industries, buildings and wage earners could all be classified as "old" and "new" with different tax rates between them. The General Assembly realized this

when it attempted to have different tax treatment between "old" and "new" buildings. When it sought to exempt new real estate construction in deteriorated areas, it placed on the ballot for the voters an amendment to the Pennsylvania Constitution, which was subsequently adopted as Article VIII, Section 2(b)(iii). *See* Local Economic Revitalization Tax Assistance Act, Act of December 1, 1977, P.L. 237, *as amended,* 72 P.S. § 4722 et seq. Certainly the distinction between old and new banks is not one that is as substantial as the difference between commercial and residential real estate was declared to be unconstitutionally non-uniform. *Massachusetts Mutual; McKnight Shopping Center; Deitch Co.*

We do not, however, declare all of the 1989 amendments unconstitutional, only the New Bank Tax Credit Law. Statutory construction favors severability of statutes and a severability clause must be given due weight. Section 1925 of the Statutory Construction Act, 1 Pa.C.S. § 1925. Section 3 of the Act of July 1, 1989, P.L. 109, the Act which added Article XIX or the New Bank Tax Credit Law to the Code, provides:

(a) Notwithstanding section 3002 of Article XXX of the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971, the provisions of Article XIX [the New Bank Tax Credit Law] are *nonseverable.* If any provision of article XIX or the application of any such provision to any person or circumstance is held invalid, the remaining provisions or applications of Article XIX are void. Any such invalidity shall result in the nullification of all credits granted under Article XIX and shall not be used as the basis to grant any credit to any other taxpayer.

(b) The invalidity of any provision or application of Article XIX shall not affect the validity of any other provision or article of the act of March 4, 1971 (P.L. 6, No. 2), known as the Tax Reform Code of 1971. (Emphasis added).

The provisions of the New Bank Tax Credit Law, Sections 1901–1909 of the Code, are nonseverable and are invalid because of our decision that Section 1904 is invalid.

However, because that article is sufficiently distinct from the other articles of the Code in that none of the other

provisions rely on it for the imposition or calculation of a tax and because the New Bank Tax Credit Law included a severability clause (Section 3(b) *supra* ), it is severable from the other articles of the Code. The 1989 amendments to Section 701 of the Code, 72 P.S. § 7701, which raised the tax rate in 1989 to 10.77%, continues to be valid against all banks.[16] Accordingly, Fidelity's post-trial motion requesting that the New Bank Tax Credit Law be declared invalid is granted.

### III.

Fidelity's final constitutional arguments rely on the fact that the 1989 amendments were enacted in response to the decision in *Fredericksburg* which required the Commonwealth to provide refunds of the single excise tax because it taxed 100% the refunds owing the banks under the decision in *Dale.* Fidelity argues that the 1989 amendments violate the Supremacy Clause and the separation of powers doctrine by effectively taxing the same U.S. obligations that *Dale* declared the Commonwealth could not tax and that *Fredericksburg* held must be refunded.

In *Fredericksburg,* the Supreme Court struck down the single excise tax which was enacted as a one-time tax only on those taxpayers claiming a refund from *Dale,* and once the calculation was done, "the tax is actually the amount of the refund claimed or to be claimed by the individual taxpayer, or the amount the taxpayer has refused to pay, as a result of *Dale National Bank.*" *Fredericksburg,* 520 Pa. at 248, 553 A.2d at 939. These facts and the fact that "[T]he tax base is equal to the total benefits taxpayers subject to its scope might derive from *Dale* ... which were computed on the basis of assets which included federal obligations," were determinative in the court's decision that the single excise tax was actually a surcharge upon refunds and taxes unpaid and was unconstitutional. *Id.* at 258, 553 A.2d at 944.

**16.** The alternative bank shares tax does not become effective based on this decision because it was expressly made effective only if Article VII (the bank shares tax) was determined to conflict with either federal law, the U.S. Constitution or the Pennsylvania Constitution, pursuant to Section 721–A of the Code, 72 P.S. § 7721–A.

The 1989 amendments to the bank shares tax was designed to recoup for the Commonwealth revenue that they lost because of credits given in compliance with *Fredericksburg*. However, the differences between the single excise tax and the tax scheme revised by the 1989 amendments are telling. In this case, an established tax was amended and there was no one-time surcharge nor was the tax base equivalent to the refunds due. Instead, the amendments altered the tax rate for all banks and then reversed part of the effect of the increased tax rate on some banks through the allowance of credits received from the single excise tax and the allowance of credits under the New Bank Tax Credit Law. This tax scheme does not abrogate Fidelity's legal right to a refund under *Fredericksburg*. What it does is give the refund in the form of a credit, which is specifically recognized in the relevant statutes and approved in *First Trust*.[17] The amendments then allow the Commonwealth to recoup revenue that it needs to meet its obligations.

Fidelity would like the Commonwealth to pay a cash refund but not be able to recoup that money back from the same taxpayers to whom it paid the refund. It seems to contend that the Commonwealth has to raise some other tax, say, the income tax rate, as opposed to the bank shares tax rate, to constitutionally recoup lost revenue. However, there is no constitutional prohibition either under the Supremacy Clause or the separation of powers doctrine to prevent the General Assembly from recouping the revenue lost from the same classification of taxpayers. *First Trust*. We believe the tax scheme enacted by the 1989 amendments is distinct from the one-time surcharge imposed 100% on a required refund that was struck down in *Fredericksburg* and this scheme does not violate the Supremacy Clause or the separation of powers doctrine as suggested by Fidelity.

**17.** In *First Trust,* this court held the judgment awarded in *First Federal* (holding that the inclusion of interest that First Federal earned from Commonwealth obligation bonds in the tax base calculation for MTITA tax violated statutory exemption provisions), was "satisfied in full by either direct refunds or excusing other tax due" so that no judgment was impaired by the amendments. *See supra* n. 6.

Accordingly, we deny the post-trial motion of Fidelity requesting that the Commonwealth be ordered to resettle its 1989 bank shares tax and contending that credits were insufficient to satisfy the Commonwealth's refund obligation. We grant the post-trial motion of the Commonwealth by holding that the tax credits provided by the Commonwealth have met its obligation to effect refunds under *Fredericksburg*. We also grant the post-trial motion of the Commonwealth by holding that the challenged amendments to the bank shares tax do not violate constitutional provisions; however, we grant Fidelity's motion that the New Bank Tax Credit Law is invalid.

## ORDER

AND NOW, this 7th day of July, 1994, the post-trial motion filed by Fidelity Bank, N.A., for modification of the decree nisi of December 6, 1993, is DENIED on the issue of credits given to Fidelity, and the post-trial motion filed by the Commonwealth is GRANTED. In accordance with the attached opinion, the Commonwealth is not required to make any refund to Fidelity because of the offsetting credits.

On the constitutional issues, the post-trial motion of Fidelity is GRANTED only insofar as it requests that the New Bank Tax Credit Law be declared invalid under the Uniformity Clause of the Pennsylvania Constitution, and in all other respects is DENIED. The post-trial motion of the Commonwealth is GRANTED except insofar as it relates to the New Bank Tax Credit Law.

NEWMAN, Judge, concurring and dissenting.

I concur with the majority opinion except for its holding that the New Bank Tax Credit Law is unconstitutional. Therefore, I respectfully dissent in part.

"Unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."

*Nordlinger v. Hahn,* —— U.S. ——, ——, 112 S.Ct. 2326, 2327, 120 L.Ed.2d 1 (1992).[1] The Supreme Court has recognized that "in structuring internal taxation schemes the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Williams v. Vermont,* 472 U.S. 14, 22, 105 S.Ct. 2465, 2471, 86 L.Ed.2d 11 (1985) *quoting Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1004, 35 L.Ed.2d 351. Furthermore, "under the equal protection clause, and under the uniformity clause, absolute equality and perfect uniformity in taxation are not required." *City of Pittsburgh v. Commonwealth,* 522 Pa. 20, 24–25, 559 A.2d 513, 515 (1989) *quoting Columbia Gas Corp. v. Commonwealth,* 468 Pa. 145, 151, 360 A.2d 592, 595 (1976).

Since the New Bank Tax Credit law involves neither fundamental rights nor a suspect classification, it is constitutional if it is rationally related to the legitimate purpose that the legislature intended to further. In enacting the New Bank Tax Credit Law, the legislature expressed its intent as follows:

The General Assembly of the Commonwealth of Pennsylvania hereby finds that:

a) Whereas, the continuing health, stability and growth of the banking industry in Pennsylvania is of great importance to the citizens of the Commonwealth; and

b) Whereas, the establishment and growth of new banks will help to foster these objectives;

c) Therefore, it is in the public interest to provide tax credits to new banks to help ensure the health, stability and growth of the banking industry in Pennsylvania and its attendant benefits to all citizens of this Commonwealth.

72 P.S. § 8902.

It is beyond any possible doubt that granting tax credits is rationally related to the Commonwealth's interest in encouraging new banks to conduct business in Pennsylvania.

1. As the majority notes, violations of the Equal Protection Clause of the Constitution of the United States and the Uniformity Clause of the Pennsylvania Constitution are to be analyzed in the same manner. *Magazine Publishers of America v. Commonwealth, Department of Revenue,* 151 Pa.Commonwealth Ct. 592, 618 A.2d 1056 (1992).

Furthermore, in order for the New Bank Tax Credit Law to be constitutional, the classification of banks chartered before and after January 1, 1979 must be "based upon some legitimate distinction between the classes that provides a non-arbitrary, reasonable and just basis for the difference in treatment." *Magazine Publishers* at 602, 618 A.2d at 1061, *quoting Leonard v. Thornburgh,* 507 Pa. 317, 321, 489 A.2d 1349, 1352. As the majority notes, "the effect of amendments and additions was to offset the large tax rate increase for new banks because they would not be receiving credits as satisfaction of the Commonwealth's refund obligation." (Majority Opinion at p. 540). The distinction between "old" and "new" banks meets the standard set forth in *Magazine Publishers* and *Leonard,* because it recognizes the legitimate difference between banks that will automatically receive a tax credit from the Commonwealth and those that will not. By offering relief from a high rate of taxation, the New Bank Tax Credit Law serves the important government interest of supporting the continued operation of new banks.

For the foregoing reasons I would conclude that the New Bank Tax Credit Law is constitutional.