**ROYAL BANK OF PENNSYLVANIA,**
Petitioner,

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Jan. 8, 1998.

Robert C. May, Camp Hill, for petitioner.

Kevin A. Moury, Senior Deputy Atty. Gen., Harrisburg, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI Judge.

Royal Bank of Pennsylvania (Taxpayer) appeals an order of the Board of Finance and Revenue (Board) denying its request for a refund of bank shares taxes it paid to the Commonwealth of Pennsylvania (Commonwealth) for tax year 1989.[1]

The dispute underlying this appeal, with various twists and turns, stems from a decision of the United States Supreme Court in *American Bank and Trust Co. v. Dallas County,* 463 U.S. 855, 103 S.Ct. 3369, 77 L.Ed.2d 1072, *rehearing denied,* 463 U.S. 1250, 104 S.Ct. 39, 77 L.Ed.2d 1457 (1983). In that case, the United States Supreme Court held that bank shares taxes computed on the basis of the bank's net assets had to deduct tax exempt U.S. obligations held by the bank in compliance with 31 U.S.C. § 3124. Following that holding, the Pennsylvania Supreme Court in *Dale National Bank v. Commonwealth,* 502 Pa. 170, 465 A.2d 965 (1983), held that the former shares tax on Pennsylvania banks which included the value of U.S. obligations in the tax base was unconstitutional. *Dale* required the Commonwealth to refund millions of dollars in taxes to banks. In response for claims for refunds, the General Assembly enacted a one-time single excise tax[2] on banks which was equal

---

1. Royal Bank and the Commonwealth have filed a stipulation of facts that we accept and adopt as our own.

2. Section 7 of the Tax Reform Code (Code), Act of December 1, 1983, P.L. 95, *formerly* 72 P.S. §§ 8301–8309.

to the shares tax refund due each bank under *Dale*. The purpose was to provide revenues equal to those anticipated through the bank shares tax but lost under *Dale*. Our Supreme Court, however, in *First National Bank of Fredericksburg v. Commonwealth*, 520 Pa. 244, 553 A.2d 937 (1989), held that the single excise tax was unconstitutional as violative of the Supremacy Clause of the United States Constitution.

Attempting again to make up the lost revenues, the General Assembly then amended the Bank Shares Tax Act in 1989 by requiring the following:

> It shall be the duty of the Department of Revenue to assess such shares for the calendar years beginning ... January 1, 1989, at the rate of 10.77 percent and for the calendar year beginning January 1, 1990 and each calendar year thereafter at the rate of 1.25 percent upon each dollar of taxable amount thereof, the taxable amount of each share of stock to be ascertained and fixed pursuant to section 701.1 and dividing this amount by the number of shares.

72 P.S. § 7701.

It also amended the Code to create a New Bank Tax Credit Law [3] that provided a tax credit for banks chartered after January 1, 1979, which had not paid bank shares tax on U.S. obligations. The new banks were eligible to receive credits equal to the sum of values based on the number of years in operation,[4] one percent of the value of their Pennsylvania deposits and based upon the loan/deposit ratio.[5] The purpose of this amendment was to provide a tax credit to those banks that were chartered after the single excise tax was found unconstitutional and, not being subject to the tax, did not receive a credit so that they would be able to offset the substantial tax rate increase made necessary to pay the refunds for the unconstitutional tax.

Challenges to these 1989 amendments were made in *Fidelity Bank, N.A. v. Commonwealth*, 165 Pa.Cmwlth. 524, 645 A.2d 452 (1994). Fidelity Bank argued that the 1989 amendments produced arbitrary and unreasonable results and violated the Uniformity Clause of the Pennsylvania Constitution because they ignored current values of bank shares and instead considered an average of unequal values of shares over a six-year period. Fidelity Bank further alleged that all banks did not equally share the tax burden because banks with equivalent current values might be taxed differently because of the unequal values in the past five years.

We explained that the 1989 amendments to the bank shares tax, including the 10.77% income tax for tax year 1989, did not violate the Uniformity Clause of the Pennsylvania Constitution because they were enacted to recoup the expected shortfall in that year's bank shares taxes due to the loss of revenue resulting from the computation of prior bank shares taxes that no longer included the banks' U.S. obligations. We further stated:

> To the contrary, the Commonwealth's public finance witness testified that the use of an averaging methodology discourage a bank from manipulating its holdings of federal obligations so as to artificially reduce its tax liability and minimize the effect of random disturbances in value. Based on this testimony, the effect of the tax appears to be to reduce the chance of arbitrary or unjust results rather than to produce such violative results. [citation omitted] Moreover, except where statutes require that the calculation be on current market value such as in assessments of real property, there is nothing in the Uniformity Clause that requires that the value of the property in the current taxing year be the only consideration for the calculation of actual value. So long as the calculation does not produce unreasonably discriminatory results, the method used,

---

**3.** Sections 1901–1909 of the Code, *as added*, by the Act of July 1, 1989, P.L. 6, 72 P.S. §§ 8901–8909.

**4.** Banks in operation for one year were eligible for a credit of $750,000; 2 years—$250,000; 3 years—$100,000; 4 years—$75,000; and 5 years or more—$25,000.

**5.** Banks with loan/deposit ratios of greater than 70% were entitled to a credit of 1.5% of their loans, while banks with ratios of less than 70% were entitled to a credit of .5% of the value of their loans.

including, as here, a six-year average, is well within the province of the legislature to define.

*Id.,* 645 A.2d at 459.

Fidelity Bank also argued that the New Bank Tax Credit Law violated uniformity and was unconstitutional because it imposed substantially different tax rates on new banks than it did on older banks. Noting that uniformity in taxation required a classification to be reasonable and that taxes had to be applied upon similar kinds of businesses with substantial equality of the tax burden on all members of the class, we agreed with Fidelity Bank that because the New Bank Tax Credit Law treated banks differently based on when they were chartered and there was no substantial difference between old and new banks, a separate classification of new banks was not reasonable. Consequently, we concluded that the New Bank Tax Credit Law violated the Uniformity Clause of the Pennsylvania Constitution and, therefore, was unconstitutional.

While *Fidelity Bank* was winding its way through the legal system, Taxpayer filed its 1989 bank shares tax report and paid bank shares taxes to the Commonwealth at a rate of 10.77% as required by the 1989 amendment to Section 701 of the Tax Reform Code.[6] The total amount of bank shares tax Royal Bank paid was $2,279,049 based on the total shares of its capital stock subscribed for or issued as of 1989. Taxpayer received a 1983 single excise tax refund in the amount of $312,236 that was credited to its 1989 bank shares tax. The tax refund credit was based on taxes paid on capital stock in existence for tax years ending January 1, 1974 through January 1, 1983. The difference in the amount between the tax paid and the refund was, in large part, due to new stock issued between January 2, 1983 and January 1, 1989, increasing its tax obligation.

Taxpayer then filed a Petition for Review with the Board requesting a refund of a substantial portion of its 1989 taxes arguing that the 1989 Bank Shares Tax amendment to the Tax Code requiring taxes for *that year only* to be paid at a rate of 10.77%[7] violated the Uniformity Clause of the Pennsylvania Constitution. Taxpayer alleged that as that tax was applied to it, the 1989 bank shares tax violated the uniformity provision because it was being taxed at a huge one-year rate disproportionate to its credit as a result of the new shares it issued since 1983. It further alleged that other banks' credits were more proportionate to the amount raised by the 10.77% one-year tax rate.[8] Taxpayer then contended that the value of the shares issued in stock offerings since January 2, 1983, should also be exempt from the 10.77% tax rate and only subject to the 1.25% rate designated for tax years after 1989. Based on our holding in *Fidelity Bank,* the Board rejected Taxpayer's constitutional challenge and this appeal followed.[9]

■ Because the 1989 amendment requires Taxpayer to pay a discriminatory

---

6. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7701.

7. The 1989 amendments also required that the tax base include the average of share values over six years; the bank pay 80% of the tax due before an objection is made; and banks chartered after January 1, 1979, receive a tax credit to offset the increased tax rate. Taxpayer has not raised any arguments relative to these amendments.

8. While Taxpayer alleges it is not challenging the general constitutionality of the tax but only how the tax has been applied to it in tax year 1989 because the tax as imposed on it is disproportionate, in effect, it is challenging the validity of the 10.77% tax rate. Essentially, its argument is that the 10.77% tax rate does not provide the same value to pre–1983 and post–1983 stock which already has a different value based on the 1983 refund. Because Taxpayer is actually challenging the validity of the tax rate, its failure to file a motion to bifurcate that issue as required by the February 21, 1997 order is of no moment.

9. In addition to Royal Bank, approximately 500 banks filed appeals for tax year 1989 challenging the 1989 amendment to the Bank Shares Act. By order issued on February 21, 1997, all of the banks were to file a stipulation of facts no later than June 20, 1997. If no stipulation of facts from any bank was filed by that date, then all the appeals would be dismissed. If a stipulation of facts was filed by any bank, than all other bank appeals were to be held in abeyance until the disposition of those cases challenging the bank shares tax for which stipulations of facts had been filed and would then be governed by the disposition of those cases. Because Taxpayer was the only bank to file a stipulation of facts, the outcome of this case will control all of the appeals of the other banks similarly situated.

amount in taxes to refund the 1989 taxes declared unconstitutional, it argues that the 1989 tax is not uniform as applied to it because its operation and effect produces an arbitrary or unjust result.[10] Because it issued new stock since 1983 and became a larger bank since that time, Taxpayer maintains that the one-time 1989 tax rate of 10.77% requires it to pay a disproportionate share of the refund by requiring it to pay approximately 800% more than it would have had to pay in 1983.[11]

Taxpayer's argument is, in part, similar to the one made in *Fidelity Bank* where we struck down a tax credit given to new banks that were not owed refunds from the 1983 tax because they were not in existence, but yet, had to pay the 1989 higher rate to fund those refunds. Holding that there was no substantial difference between "old" and "new" banks, we stated:

> We can see no difference for uniformity purposes based upon when banks are chartered. All banks are regulated, have capital requirements, compete against each other and offer much the same services, no matter when chartered. If we were to adopt a class based solely on when the entity was created, uniformity would be rendered meaningless. If that were a proper basis, industries, buildings and wage earners could all be classified as "old" and "new" with different tax rates between them.

*Id.*, 645 A.2d at 461.

■ Just as there is no substantial difference between "old" and "new" banks to justify a tax credit to relieve "new" banks of the 1989 high tax necessary to refund 1983 taxes, there is no valid distinction to treat Taxpayer any different because it issued more shares and its value increased between the time the 1983 tax was declared unconstitutional and the imposition of the 1989 tax. All bank shares in 1989 were taxed at the same rate for the same year based on the same measurement. Moreover, absent the credits, no one would contest that the tax was unfair.

■ What makes Taxpayer's argument somewhat different is that it is contending because the 1989 tax, in large part, was enacted to pay the refunds, we need to look to their combined effect to determine whether it is discriminatory and non-uniform as to it. However, why a tax was passed or the purpose for which the money is being used once the revenue is raised does not impact on whether the tax itself is constitutional. Consequently, while the 1989 tax was enacted to refund the 1983 tax, the 1989 tax stands on its own, and if it is uniformly applied to all banks, whether one bank received a larger or smaller credit proportionate to what it paid under the 1989 tax is irrelevant in considering whether the tax has any unconstitutional effects to any taxpayer.

Because Taxpayer has not alleged that it was taxed at 10.77% in 1989 while other banks were taxed at a different rate, there has been no violation of the Uniformity Clause. Consequently, Taxpayer's appeal is dismissed and the order of the Board is affirmed.

**10.** Taxpayer contends that our holding in *School District of Philadelphia v. Damico, Inc.*, 15 Pa. Cmwlth. 558, 328 A.2d 190 (1974) is applicable to this case because it also addresses valuation of property relative to taxation. In *Damico*, the issue was whether the uniformity clause was violated when a taxpayer was required to pay taxes for leasing a parking garage that was part of a larger building, and the taxes were based on a formula that included calculation of the total value of the real estate. We concluded that the tax as applied to the lessee was constitutional in its general application, but not uniformly applied because the lessee only used a small percentage of the total square footage but was required to pay taxes on the entire building. However, *Damico* is limited to its own facts because it deals with different subjects of taxation being valued at the same rate. Unlike *Damico*, where there were two types of property involved, this case involves shares that are the same object of taxation and valued in the same way.

**11.** The Uniformity Clause of the Pennsylvania Constitution, Article VIII, Section 1, provides:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general law.

For a tax to be considered uniform, the classification of taxpayers must be reasonable and the tax itself must be applied with uniformity upon similar kinds of businesses or property with substantial equality of the tax burden on all members of the class. *Amidon v. Kane*, 444 Pa. 38, 279 A.2d 53 (1971).

## ORDER

AND NOW, this 8th day of January, 1998, the order of the Board of Finance and Revenue, dated July 30, 1996, is affirmed. Unless exceptions are filed within thirty (30) days in accordance with the provisions of Pa. R.A.P. 1571(i), this order shall become final.