**[J-4A-D-2015] [M.O. - Eakin, J.]**

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| CITY OF PHILADELPHIA, | : | Nos. 19-22 EAP 2014 |
| | : | |
| Appellant | : | Appeals from the Orders of the |
| | : | Commonwealth Court entered on |
| v. | : | 11/18/13, at Nos. 97 and 98 C.D. 2013 |
| | : | (reargument denied 1/7/14), affirming the |
| CITY OF PHILADELPHIA TAX REVIEW | : | order dated 12/27/12 of the Court of |
| BOARD TO THE USE OF KEYSTONE | : | Common Pleas, Philadelphia County, Civil |
| HEALTH PLAN EAST, INC., | : | Division, at Nos. 3671, 3672, 3675, 3678, |
| | : | January term 2012 |
| Appellee | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | ARGUED:  March 10, 2015 |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA TAX REVIEW | : | |
| BOARD TO THE USE OF KEYSTONE | : | |
| HEALTH PLAN EAST, INC., | : | |
| | : | |
| Appellee | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA TAX REVIEW | : | |
| BOARD TO THE USE OF QCC | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Appellee | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |

|                              |   |
|------------------------------|---|
| Appellant                    | : |
|                              | : |
| v.                           | : |
|                              | : |
| CITY OF PHILADELPHIA TAX REVIEW | : |
| BOARD TO THE USE OF QCC      | : |
| INSURANCE COMPANY,           | : |
|                              | : |
| Appellee                     | : |


***CONCURRING AND DISSENTING OPINION***


**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED:  December 21, 2015**


I agree with the majority's treatment of Taxpayers' cross-appeal issue regarding the availability of refunds.  I differ, however, with the decision to sustain the award of credits.

As to the matter of credits, initially, I agree with the majority that the Commonwealth Court erred in implementing a rule of construction favorable to Taxpayers.  *See* Majority Opinion, *slip op.* at 16 n.4.  In the refunds/credits arena, the approach of construing ambiguities in favor of the government is based, in part, upon the principle that recompense for overpayments of voluntarily paid taxes (that is, taxes not paid under coercion or duress beyond mere adherence to the requirements of the law) is a matter of legislative grace and not entitlement.  *See, e.g.*, *Land Holding Corp. v. Bd. of Fin. & Revenue*, 388 Pa. 61, 65, 130 A.2d 700, 703 (1957) (explaining that "[t]he right to sue the Commonwealth for the recovery of money or taxes alleged to have

been erroneously paid to it exists only by the grace of the Legislature[,]" and, accordingly, refund statutes are to be strictly construed).[1]

I differ, however, with the majority's depiction, substantively, that credits are entirely distinct from refunds, *see* Majority Opinion, *slip op.* at 15-16, either generally or under relevant provisions of the Philadelphia Code. Indeed, the concept of the affordance of a refund by crediting an account due presently or in the future is so prevalent that this form of credit is often referenced as a "refund credit." *See, e.g., Royal Bank of Pa. v. Commonwealth*, 705 A.2d 515, 517 (Pa. Cmwlth. 1998); *Pa. Retailers' Ass'ns v. PUC*, 64 Pa. Cmwlth. 491, 502 n.12, 440 A.2d 1267, 1272 n.12 (1982); *cf. Caver v. Cent. Ala. Elec. Coop.*, No. CV 15-0129-WS-C, 2015 WL 5286501, at *5 n.8 (S.D. Ala. Sept. 8, 2015) ("[T]he common ordinary meaning of the term 'refunds' embraces both cash and credit varieties."). Accordingly, I find it likely that, when in imposing limitations on the availability of "refunds," a government body also intends to restrict the availability of refund credits. At the very least, there is ambiguity in this regard which, as explained above, militates in favor of the taxing body.

Even if this were not the case in general application, Section 19-1703 itself explicitly employs the refund-crediting concept. In this regard, Subsections 19-1703(5) and (8) each contemplate that, upon the granting of a refund by the Department or the Tax Review Board "the account of [the] petitioner may be credited with the amount of

---

[1] *Accord Phila. Gas Works ex rel. City of Phila. v. Commonwealth*, 741 A.2d 841, 846 n.6 (Pa. Cmwlth. 1999) (refusing to apply strict construction against the government because "the dispute in this matter concerns the time limitation for seeking a refund or a credit of the prepaid taxes, not the rate or imposition of the . . . tax" (emphasis added)); *see also Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 905 P.2d 338, 344 (Wash. 1995) ("It is a general principle that tax statutes conferring credits, refunds or deductions are construed narrowly."). *See generally* 85 C.J.S. TAXATION §2208 (2015) ("A refund of taxes is solely a matter of legislative grace, and any person seeking such relief must bring himself or herself clearly within the terms of the statute authorizing the same.").

such refund," in lieu of the tender of a monetary payment.  PHILA. CODE §19-1703(5), (8).  These provisions plainly allow a form of a credit, which is made available through the refund process and, accordingly, is explicitly subject to the limitations attending the availability of refunds.[2]  For this reason, I find the reliance by the majority and the intermediate court on the absence of the word "credit" from Section 19-1703(1)(d) to be unpersuasive.  *See* Majority Opinion, *slip op.* at 16 (quoting *City of Phila. v. City of Phila. Tax Rev. Bd.*, Nos. 97-98 C.D. 2013, *slip op.*, 2013 WL 6095552, at *6 n.6 (Pa. Cmwlth. Nov. 18, 2013).[3]  Again, City Council affirmatively provided for credits in Section 19-1703, but solely as a means to effectuate the refunds already subject to the express three-year repose.[4]

---

[2] Along these lines, Taxpayers acknowledge in their briefs that the permissive offsetting of an amount to be refunded against any taxes presently due from the taxpayer "is the absolute essence of a credit and clearly distinguishable from the former option of a refund."  Brief for Appellees at 25.  Indeed, Taxpayers accept that statutory terms which embody such an offsetting concept -- but which do not employ the actual word "credit" -- nevertheless "explicitly refer[ ] to credits."  Reply Brief for Appellees at 25.  Thus, while they do not discuss Subsections 19-1703(5) or (8) in their submissions, Taxpayers' contentions are entirely consistent with the conclusion that such provisions expressly contemplate a form of a credit.

[3] Notably, it is a cardinal principle of statutory construction that statutes are to be read as a whole.  *See, e.g.*, *Bd. of Revision of Taxes, City of Phila. v. City of Phila.*, 607 Pa. 104, 124-25, 4 A.3d 610, 622 (2010).

[4] The majority suggests that the City is able to budget prospectively for liability based on credits.  *See* Majority Opinion, *slip op.* at 16.  From my point of view, the ability to do so (for a time period depending on factors outside the City's control such as the extent of a taxpayer's present liabilities subject to offsetting) is far less significant than the City's apparently perpetual exposure to credits long after tax liabilities are believed to have been settled.  *Accord City of Phila. v. City of Phila. Tax Rev. Bd.*, Nos. 97-98 C.D. 2013, *slip op.*, 2013 WL 6095552, at *7 & n.2 (Pellegrini, J., dissenting).

Next, I turn to Taxpayers' arguments grounded upon Section 19-2610 of the Philadelphia Code, PHILA. CODE §19-2610 (requiring the Department to promulgate regulations to provide for credits to be granted on overpayments of estimated taxes), and Section 202(A) of the Department's regulations, PHILA. BUS. PRIV. TAX REG. §202(A) (implementing Section 19-2610 by prescribing that overpayments of a current tax year are to be applied first to the payment of an estimated tax for the tax year that follows or to other taxes due, then, in the absence of a refund, to future tax years). Upon review, I differ with Taxpayers' contention that these provisions were intended to encompass allowance for credit claims beyond the time period permitted for seeking refunds. In this regard, I do not view the filing of an amended tax return as harkening directly back to estimated tax payments, because there is a material, intervening event, namely, the filing of an initial return. After the filing of the initial return -- and its reconciliation of estimated tax payments with tax liabilities (particularly where this process encompasses provision of refunds or credits to taxpayers) -- associated estimated tax payments can no longer be viewed in isolation, but rather, must be considered in light of the reconciliation which has occurred.[5]

---

[5] This is amply demonstrated via reference to Appellee QCC Insurance Company's amended 2003 Business Privilege Tax return. Although this return, filed in 2009, reflects the same estimated tax payments figure that QCC had indicated on the initial return ($4,558,765), *compare* R.R. 26a *with* R.R. 79a, in the amended return, the company needed to account for a refund of $401,979 tendered by the City in November 2004 based on overpayments asserted in the initial return. This reconciliation, then -- and not the estimated tax payments figure -- measured against QCC's Business Privilege Tax liability, served as the basis for QCC's refund claim advanced in its 2009 amended return for the 2003 tax year.

Notably, the 2003 Business Privilege Tax form simply does not contemplate amended filings which require these sorts of reconciliations. Thus, QCC noted them by way of an annotation. *See* R.R. 79a. Consistent with my rationale above, I regard the form, (…continued)

For this reason, when City Council required the Department to promulgate regulations to provide for credits to be granted for overpayments of "estimated tax payments," PHILA. CODE §19-2610, I find it unlikely that Council contemplated that such prescription would circumvent Section 19-1703(1)(d)'s three-year limitation and herald credit claims for overpayments submitted for the first time many years after the relevant tax year. Rather, while acknowledging that there is ambiguity, but applying a construction favorable to the government, I conclude that City Council intended for the reconciliation of estimated tax payments to be accomplished in tandem with the timely filing of an initial return. Thus, consistent with the City's position, I believe that the only appropriate procedure for a timely recoupment request is to seek a refund under Section 19-1703.[6]

I recognize the disparity arising out of the requirement for taxpayers to pay additional business privilege taxes, when implicated by a federal audit completed after the Section 19-1703(1)(d) limitations period has expired, and the enforcement of Section 19-1703(1)(d) to foreclose taxpayer refund claims submitted after such time.

---

(continued…)

Section 19-2610, and Section 202(A) as being analogous, in the sense that their content is geared primarily to the treatment of initial -- and not later amended -- returns.

[6] Certainly, City Council could have been more specific, as well as provided particularized procedures for the submission of amended returns. The absence of such procedures, however, does not require that provisions which facially appear to relate to an initial reconciliation of estimated tax payments as such, accomplished by way of an initial return, should be expanded to encompass amended returns. Indeed, the Department's implementing regulation, PHILA. BUS. PRIV. TAX REG. §202(A), also is most naturally read to focus on the allowance of credits pertaining to the reconciliation occurring upon the filing of an initial return. *See id.* ("Any overpayment of the current year tax shall be applied first to the payment of an estimated tax for the tax year that follows or to other taxes due. A remaining balance, if any, shall be applied to future [tax] years unless the taxpayer requests a refund of the amount.").

However, there simply is no salient requirement for equilibrium as between constraints upon the government (which represents the interests of the citizenry at large) and those affecting individual taxpayers.

Based upon the above, I would hold that, because Taxpayers failed to file their amended returns within the three-year period provided under Section 19-1703(1)(d), the availability of refunds and/or credits for their past overpayments was foreclosed.[7] Accordingly, I would reverse the order of the Commonwealth Court relative to the City's appeal (concerning tax credits) and affirm the order as to Taxpayers' cross-appeal (regarding refunds).

Mr. Justice Baer joins this concurring and dissenting opinion.

---

[7] Viewed from the perspective of the Independence Blue Cross family of companies, the deductions to federal income tax liabilities overlooked by Taxpayers (*i.e.*, the subsidiaries) apparently mirrored an understatement of net income by Independence Blue Cross (the parent). This appeal, however, does not concern whether Independence Blue Cross might be entitled to an offset for payments made by its subsidiaries relative to any additional local business privilege tax liabilities which Independence Blue Cross may have incurred on account of the federal audit. Taking a relaxed view of corporate formalities, at least, it would seem that the decisions in *Bull v. United States*, 295 U.S. 247, 55 S. Ct. 695 (1935), and *McNeil-PPC, Inc. v. Commonwealth*, 575 Pa. 50, 834 A.2d 515 (2003), cited by Taxpayers, might be more relevant to this issue.